## SKILLMAN v. LACHMAN et al.

Where the plaintiff is appellant, and the judgment is for the defendant, the jurisdiction of the Supreme Court on appeal is determined by the amount claimed in the complaint.

If the appeal is by the plaintiff from a judgment in his favor, then the amount in dispute is the difference between the amount of the judgment and the sum claimed by the complaint.

The jurisdiction of the Supreme Court on appeal is determined by the amount in

Skillman *v.* Lachman.

dispute; and, before the amendments to the Constitution which went into effect in 1863, that amount was any sum' exceeding two hundred dollars, exclusive of costs.

If the appeal is taken by the defendant from a judgment in his favor, where he set up a counter claim, the amount in dispute is the difference between the amount of the judgment, exclusive of costs, and the sum claimed in his counter claim.

The interest due forms a part of the amount in dispute; and where the principal sum, for which judgment is recovered, is less than two hundred dollars, if the interest added swells the judgment to more than two hundred dollars, the Supreme Court has jurisdiction.

Where the several owners of a mine unite and coöperate in working the same, they form a mining partnership, which is governed by many of the rules relating to ordinary partnerships, but which has some rules peculiar to itself.

One of these rules, peculiar to a mining partnership, is, that each owner has a right at any time to sell and convey his interest, and such sale does not dissolve the partnership.

Another of these rules is, that the law does not, in case of a mining partnership, imply any authority, either to a member of such partnership, or to its managing agent, to bind the company or its individual members by a promissory note, or a contract of indebtedness, executed in the name of the company; but it is incumbent on the party claiming to hold the company for such indebtedness to show that the person, executing or contracting the same in the name of the company, had power and authority to do so.

APPEAL from the County Court, Nevada County.

The facts are stated in the opinion of the Court.

*C. Wilson Hill,* for Appellant.

The points that arise are these : it being conceded that the members of this mining company are tenants in common, and so found by the Court:

1. Can one tenant in common bind his co-tenants, or, rather, make contracts, like the present, binding them without their authority or consent ?

2. Would representations of defendant, as co-tenant, made before the execution of the note, that he was interested in the mining claims, be sufficient authority to authorize Sprout, his co-tenant, to execute said note so as to bind defendant ?

Under the first point, I submit : Partners, by virtue of an agency arising from the relations existing between them as such, may make such contracts; but the relations existing between partners and those between tenants in common are widely distinct. Among

tenants in common there is no community of interest or authority, nor are they agents of each other, unless under special authority delegated to them. (Story on Partnership, Sec. 453.)   Tenants in common of mines are considered, both in reference to themselves and to others, as the ordinary owners of the land, working their respective interest of the mines, responsible only for their own acts, subject to no laws of partnership whatever, and possessing distinct rights in the property.   (*Crawshay* v. *Maule*, 1 Proanst. 523.)   As tenants in common and as joint owners in mines, one tenant in common has no authority or power to pledge the credit of the general company; and the fact that one tenant in common has the general management of the mines makes no difference, in the absence of circumstances from which authority for that purpose can be inferred.   (*Ricketts* v. *Bennet*, 4 C. B. 686 ; *Manning* v. *Granger & Scott*, 17 Law Jurist, C. P., 17.)

*Thomas P. Hawley*, for Respondent.

Does the finding of facts support the judgment?   The Court finds, that Sprout was a member, and foreman, of the Gold Hill Company, and that he was authorized to execute a company note for the debts of the company.   Also, that the note sued upon was by said Sprout, executed in said capacity, and given for a company debt.   Now, if Sprout was authorized (and there is no doubt on the point) to execute this note for the company, then it is only necessary to see whether D. Lachman was a member, or can be holden as a member, of said company.

The counsel for appellants goes behind the facts found by the Court, and contends that a tenant in common cannot, without authority from his co-tenant, bind such co-tenant by note ; *ergo*, that Sprout could not bind Lachman by the note executed to Skillman.

I am perfectly willing to concede, that one tenant in common cannot, from that fact alone, bind his co-tenant by contract; but, with all due respect to the opinions of the learned counsel for appellant, I must frankly admit my inability to see its application in the present case.

It is apparent from the evidence, as well as from the facts found

Skillman *v.* Lachman.

by the learned Judge, that the owners of certain mining ground had thrown their several interests together, and formed a mining company known as the Gold Hill Company. Hence, we here find not only tenancy in common, but, more than this, we find the interests of the several owners thrown together for the conducting of a certain business—that of mining—for the common profit of all. We find the owners no longer representing their several interests as individuals, but we find those interests associated together in a mining partnership, under the name " Gold Hill Company "; and we find W. P. Sprout inducted as managing partner and foreman of said company, employing workmen, purchasing materials, giving the notes and due-bills of said company for company indebtedness, and transacting the whole business of said Gold Hill Company, with the acquiescence, consent, and approval of said company.

The working of a mine may be the subject of a partnership, and such partnership is subject to all the rules governing partnerships. (Collyer on Partnership, Sec. 165 ; Story on Partnership, Sec. 82 ; Collyer on Mines, 58 ; Rockwell on Mines, 574.)

The fact that the partnership was formed for the purpose of deriving profit from real estate by working the mines therein, coupled with the appointment of Sprout as the agent for the conduct of said business, would be sufficient to authorize Sprout to bind the company by note.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring, and COPE, C. J. concurring specially.

This is an action upon a promissory note for one hundred and two dollars, with interest at three per cent. per month, against the defendants, as members of the " Gold Hill Company," originally brought before a Justice of the Peace, where a judgment was rendered against the defendants, from which they appealed to the County Court, where judgment was again rendered against them for two hundred and sixty dollars and forty-six cents, besides costs, that sum being the principal and interest of the note, and from which they appeal to this Court.

The respondent contends that as the note was for the sum of one

14

hundred and two dollars only, this Court has no jurisdiction of the case. Where the plaintiff is appellant, and the judgment is for the defendant, the jurisdiction of this Court is determined by the amount claimed by the complaint, for that is the " amount in dispute " in such cases. (*Gillespie* v. *Benson*, 18 Cal. 410 ; *Votan* v. *Reese*, 20 Id. 89.)   But if the appeal is by the plaintiff from·a judgment in his favor, then the " amount in dispute " is the difference between the amount of the judgment and the sum claimed by the complaint. (*Votan* v. *Reese*, 20 Cal. 89.)   So, upon the same principle, if the appeal is taken by the defendant from a judgment rendered against him for a sum exceeding two hundred dollars, exclusive of costs and per centage, this Court has jurisdiction of the case, because the amount of the judgment is the " amount in dispute " on the appeal. So, too, if the appeal is taken by the defendant from a judgment in his favor, where he has set up a counter claim, if that judgment is for a sum more than two hundred dollars less than he claims in his answer, this Court has jurisdiction.   The respondent contends, however, that the interest due on the demand, forms no part of the amount to be included in the estimate of the " amount in dispute." In this he is mistaken.   The interest forms part of the demand sued for, and should properly be included in the estimate.   It follows that the objection to the jurisdiction of this Court is not well taken.

The transcript in this case is very imperfect—neither the note sued on nor the pleadings are inserted in it.   It appears, however, that the plaintiff furnished the " Gold Hill Company " (a company of persons who were working a mine together) with a quantity of lumber, for which the note was given, and which was signed, as follows:  " H. P. Sprout, Foreman for Gold Hill Company."   When the note was offered in evidence in the County Court, the defendants objected that it was the note of Sprout, and not of the company, which was overruled and excepted to.   Judging from the signature it would appear to be the note of Sprout alone, and the words " Foreman for Gold Hill Company " are merely *descriptio personæ;* but the terms of the note itself may show that it was, in fact, intended to be the note of the company.   This point we cannot determine, as the note does not appear in the transcript.

The principal point raised by the appellant is that the owners of

Skillman *v.* Lachman.

the claim are tenants in common and not partners, that Sprout was one of the owners, and that one co-tenant cannot bind his co-tenants by a note given in the name of the company.   This question of the relation which exists between persons owning several interests in a mine, and engaged in working the same, is a very important one. Whatever may be the rights and liabilities of tenants in common of a mine not being worked, it is clear that where the several owners unite and coöperate in working the mine, then a new relation exists between them, and, to a certain extent, they are governed by the rules relating to partnerships.   They form what is termed a mining partnership, which is governed by many of the rules relating to ordinary partnerships, but which has also some rules peculiar to itself—one of which is that one person may convey his interest in the mine and business, without dissolving the partnership.   (*Fereday* v. *Wightwick*, 1 Russ. & Mylne, 49.)   Still, there may be a partnership in the working of a mine, subject to the rules relating to an ordinary partnership in trade.   (Story on Part. Sec. 82.) And this relation of partnership may be constituted either by express stipulation or by implication deduced from the acts of the parties. (Rockw. on Mines, 575.)   But in the case of an ordinary mining partnership, something more will be required to raise the presumption of liability arising from persons holding themselves out to the world as partners than would be necessary in the case of an ordinary partnership.   Such persons, in the absence of other circumstances, cannot fairly be presumed to have intended to render themselves liable to all the consequences of a commercial partnership.   (Id.)   The same author concludes his examination of this question, as follows: "If the works are carried on by persons as mere owners of land, concurring in a general system of management for their common benefit, the shares of each person will only be liable for his individual engagement, and to the payment of debts contracted by himself, or his authorized agent, without interfering with the shares of the other tenants in common."   (Id. 579.)

There have been several decisions relative to the rights and liabilities of shareholders in mining companies to the public and among themselves, which it may be well to examine.   In the case of *Vice* v. *Lady Anson* (7 B. & C. 409), which was an action for

goods sold and materials furnished for working a mine, in which the defendant held one share, evidenced only by a certificate issued by the secretary of the company, the plaintiff, at the time he furnished the goods, had no knowledge that she was a shareholder. She had paid the deposit on some shares, and had spoken and written of herself (in private letters) as a shareholder of the company. The Judge held that the plaintiff did not actually give credit to the defendant, and was not misled by her, and that she never held herself out to the world as a partner, and therefore she could only be chargeable on the ground of being really interested. The fact that she thought she had an interest did not make her interested; and he held that the certificate conveyed no interest in the mine, and therefore she was not liable. The correctness of this decision, that it was necessary to prove a conveyance of an interest in the mine, has been doubted.

The case of *Dickinson* v. *Valpy* (10 B. & C. 128), was an action by an indorsee of a bill of exchange, drawn and accepted by a mining company, against the defendant as a member of the company. The defendant had applied for and obtained shares in the company, on which he had paid several installments. The business of the company was transacted by a Board of Directors, and the bill had been drawn and accepted in pursuance of a resolution passed by them. It was held necessary for the plaintiff to show that the directors had power to bind the shareholders by drawing bills of exchange; and for that purpose, evidence should have been given of the nature and character of the business of the company, to show that in order to carry into effect the purposes for which it was instituted the drawing and accepting of bills was necessary, or to show from the practice of similar companies that it was *usual* to draw such bills. It was also held, that although in ordinary trading partnerships the law implied that one partner had power to bind another by drawing and accepting bills, yet that rule did not apply to mining partnerships, without showing that it was necessary to carry on its business.

In *Judson* v. *Bourne* (6 M. & W. 461), it was held that the members of a mining company have authority by law (in the absence of any proof of a more limited authority), to bind each other

by dealings on credit for the purpose of working the mines, if that appears to be necessary or usual in the management of the mines. In *Hawtayne* v. *Bourne* (7 M. & W. 595), the managing agent of the mining company had borrowed money from a bank to pay debts due to laborers who had levied distress warrants upon the materials of the mine, and it was held that there was no rule of law that such an agent could, even in case of an emergency suddenly arising, raise money and pledge the credit of his principals for its repayment; that the authority of the agent was only that he should conduct and carry on the affairs of the mine in the usual manner, and there was no proof of express authority to borrow money, or that it was necessary in the ordinary course of the undertaking.

A joint stock company was formed to work a mine, in which the defendant became a shareholder, and took part in its proceedings. The prospectus, issued on the formation of the company, stated that all supplies for the mine were to be purchased at cash prices, and no debt was to be incurred; and the scrip certificates also bore an indorsement to the same effect. The plaintiff supplied goods for the necessary working of the mine, on the order of a resident agent appointed by the directors to manage the mine, which was the customary course in such concerns: *held*, that the defendant was liable to the plaintiff for the price of such goods, notwithstanding the statements in the prospectus and certificates, unless it were shown that the agent had, in fact, no authority from the defendant, and that the plaintiff had notice thereof. (*Hawkin* v. *Bourne*, 8 M. & W. 703.)

Where a defendant is charged with a debt in an action for work and labor as a partner in a mining company, but is not shown to have either contracted such debt personally or represented himself to the plaintiff as a partner, the fact of his having been partner may nevertheless be shown by evidence short of strict proof that he had executed a deed of copartnership, or was legally interested in the mine. The fact may be proved by his admission made before or after the debt was incurred. (*Ralph* v. *Harvey*, 1 Q. B. 845.) One of several co-adventurers in a mine has not, as such, any authority to pledge the credit of the general body for money borrowed for the purposes of the concern. And the fact of his

having the general management of the mine makes no difference, in the absence of circumstances from which an implied authority for that purpose can be inferred. (*Ricketts* v. *Burnett*, 4 Q. B. 686.)

Such is the uncertainty of mining operations that few are willing to risk all their means in such undertakings; and it is therefore customary for a number of persons to unite in the enterprise; and often the interests owned by each differ greatly in amount, according as each is able to furnish means, or is willing to take the risk. As a general rule, it is impracticable for each proprietor to work his interest in the mine separate from the others; hence arises the necessity for an organization of some kind to work the mine, such as a corporation, joint stock company, or mining partnership. The company in the present case is one of the latter class. As each owner has a right to sell and convey his interest at any time, and as, in ordinary partnerships, such sale would dissolve the partnership, and compel a winding up and settlement of the business, which would be most disastrous to a mining enterprise, it has become an established principle that such sale does not dissolve a mining partnership, but it continues on as before. Such a radical change in the law of partnership necessitates other changes. One result is, that new members are thus introduced into the company without the consent, and often against the wishes, of the other members; and it would be most unjust to subject each proprietor to personal liabilities, which might sweep away all his property, created against his consent, by those who became members against his wishes. Hence arises the necessity of establishing new rules for such partnerships, differing from those regulating ordinary partnerships, especially those relating to the power of any one member, or a majority of the members, or of the Superintendent or managing agent, to make contracts binding upon the company or its members, and also regulating the extent and nature of the liability of each proprietor for the company debts, as between themselves and third persons. The rules regulating ordinary partnerships will, to some extent, form a proper guide, but do not necessarily determine these questions. It is impossible to lay down a perfect code of rules upon this subject; but, like other legal rules, they must be settled as they arise in

cases requiring their determination.   Such rules must be governed by the peculiar condition and circumstances of the country, and must be founded upon sound principles of justice, and such as will protect the rights of individual proprietors against the unauthorized acts of others, and at the same time properly secure the claims of creditors and insure the successful working of the mine.

In the present case it appears that the defendant Lachman, for a long time prior and up to June 25th, 1858, held a mortgage on the interest in the mine of one Prior; that on that day he took a conveyance of that interest in satisfaction of the mortgage, and conveyed the same interest to one of the defendants, Sprout, on the twenty-eighth day of June, and received a mortgage on Sprout's interest in the mine to secure the payment of the purchase money. This appears to be, in fact, all the interest he had; but it was proved that both prior to and after the date of the note, which was dated June 20th, he admitted to two persons, one of whom was a brother of the plaintiff, and who delivered most of the lumber, that he owned an interest in the mine.   It does not appear that any of these statements of Lachman were the means of inducing the plaintiff to sell or deliver the lumber.   These statements of the defendant Lachman do not operate as an estoppel upon him, unless it appears that the plaintiff was induced thereby to sell and deliver the lumber to the company.   Neither the evidence nor the findings of the Court contain any facts or evidence establishing this point.

But there is still a more important objection to the findings and judgment in this case.   There was no evidence of any authority having been given by the company, or Lachman, to Sprout, a member of the company and the managing agent or foreman, to execute a promissory note in the name of and binding the company for the indebtedness due the plaintiff, or any general authority to that effect. In fact, several members, including Lachman, testified that they never gave him any such authority.   It is clear that the law does not, in the case of mining partnerships, imply any such authority either to a member of such partnership or to its managing agent. In this respect the rule of law is different from that of ordinary commercial partnerships.   It was clearly the duty of the plaintiff to prove that the person executing the note in the name of the com-

pany had power and authority to do so.   He might have had power to purchase the lumber for the use of the mine, but that is very different from authorizing him to execute a note in the name of the company, bearing interest at the rate of three per cent. per month. In this case the County Court failed to draw the proper distinction between the liability of members of a mining partnership and ordinary trading partnerships, and in this it erred.

The judgment is therefore reversed and the cause remanded.

COPE, C. J.—I think the conclusion arrived at by the Justice, CROCKER, is correct, and I therefore concur in the judgment.