WILLIAM H. DURYEA *v.* HIRAM BURT, JOHN DE-
PUY, AND EDWARD BURRELL.

WHAT CONSTITUTES A MINING PARTNERSHIP.—If two or more persons acquire a mining claim for the purpose of working the same and extracting the mineral therefrom, and actually engage in working the same, and share, according to the interest of each, the profit and loss, the partnership relation subsists between them, although there is no express agreement between them to become partners, or to share the profits and losses.

DISSOLUTION OF MINING PARTNERSHIP.—One of the partners in a mining partnership may convey his interest in the mine and business without dissolving the partnership.

MINING CLAIM OF A MINING PARTNERSHIP IS PARTNERSHIP PROPERTY.—The mining ground belonging to and worked by a mining partnership and acquired for mining purposes, whether purchased with partnership funds or brought into the concern by individual members as a portion of the capital stock, is, in equity, for the purpose of a settlement of the partnership affairs, to be treated as partnership property.

LIEN OF MEMBER OF MINING PARTNERSHIP ON ITS PROPERTY.—Each member of a mining partnership has a lien upon the partnership property for the debts due the creditors of the concern, and for moneys advanced by him for its use, which he may enforce in equity, even if there has been no agreement among the partners that such lien shall exist.

PURCHASER OF INTEREST OF ONE MINING PARTNER HOLDS IT SUBJECT TO LIEN.—If a member of a mining partnership sells his interest in the mine, the purchaser takes it subject to any lien existing in favor of a copartner for debts due the creditors, or advances made for the uses of the concern, unless he becomes a purchaser in good faith for a valuable consideration, without notice of such lien.

72

NOTICE OF LIEN ON SALE OF MINING PARTNER OF HIS INTEREST.—If while a mining company is engaged in working its mining grounds as partners, one partner sells his interest in the mine, the purchaser will be deemed to buy with notice of any lien resulting from the relation of the partners to each other and to the creditors of the partnership.

APPEAL from the District Court, Eleventh Judicial District, Nevada County.

The plaintiff appealed from the judgment and from an order denying a new trial.

The other facts are stated in the opinion of the Court.

*D. Belden*, for Appellant.

The joint enterprise of Duryea and Burt in working these mines under an agreement to share the profits and losses constituted a partnership. (Collyer on Partnership, Secs. 4 to 86 ; Story on Partnership, Sec. 19 ; 3 Kent's Com. 24 ; *Champion* v. *Bostwick*, 18 Wend. 186 ; *Laflen* v. *Naglee*, 9 Cal. 678.) And each of the partners has a specific lien upon the partnership stock for the debts of the firm, and also for his own advances made to his copartners. (Collyer on Part. 109 ; Story on Part. 145 ; *Chase* v. *Steel*, 9 Cal. 64 ; *Conroy* v. *Woods*, 13 Cal. 629 ; *Bradford* v. *Kimberly*, 3 Johnson Ch. Rep. 431 ; *Mumford* v. *McKay*, 8 Wend. 441 ; *Bullock* v. *Hubbard*, 23 Cal. 500.) And in equity all real property acquired with partnership funds, or for partnership purposes, is regarded as personal estate, so far as the payment of partnership debts and the adjustment of partnership affairs is concerned. (Collyer on Part. 116 to 145 ; Story on Part. 92 ; *Collumb* v. *Read*, 24 N. Y. Rep. 573 ; *Buckley* v. *Buckley*, 11 Barb. 76 ; *Buchan* v. *Sumner*, 2 Barb. Ch. 198 ; *Sigourney* v. *Munn*, 7 Conn. R. 11 ; *Dyer* v. *Clark*, 5 Metc. 978 ; *Depuy* v. *Leavenworth*, 17 Cal. 267 ; *Jones* v. *Parsons*, 25 Cal. 100.) " So if real estate be purchased with partnership funds, *or for the uses* of the partnership, held in equity charged with the partnership debts." (*Buchan* v. *Sumner*, 2 Barb. Ch. Rep. 198 ; approved in *Collumb* v. *Read*, 24 N. Y. Rep. 573.)

We have thus far considered this case under the general

rules governing commercial partnership. I shall now endeavor to show.that in an ordinary mining partnership, such as this is found to have been, the equitable lien in favor of the partnership is extended rather than limited. Says Story : " Thus, for example, there may be a partnership in the working of the mine, for Courts of equity constantly treat the working of a mine as a species of trade, and apply the same remedial justice to such cases as they do to ordinary partnerships," (Story on Part. Sec. 82 ;) and quotes with approbation the language of Lord Eldon, in *Crawshay* v. *Maule*, 1 Swanst Rep. 518, 523, 526 : " Whatever may be the rights and liabilities of tenants in common of a mine not being worked, it is clear that where the several owners unite and co-operate in working the mine, then a new relation exists between them, and to a certain extent they are governed by the rules relating to partnerships, and this relation of partnership may be constituted either by express stipulation, or by implication deduced from the acts of the parties."

The case of *Fereday* v. *Wightwick*, 1 Russ. and Myl. 45, is precisely like the present. Said Sir John Leach : " This property was acquired by these partners for the purposes of the partnership concern ; therefore, though in the nature of real property, it is subject to all the debts of the partnership, and to the claim of one of the partners incurred in the administration of the property." (Collyer on Mines, 79.) The same case afterwards appeared in 1 Tam., quoted in 2 Harrison's Digest, 3,876.

The learned Judge whose findings and conclusions of law accompany this case, states that there was no agreement between Duryea and Burt that there should be a lien upon either interest for the company debt, and his legal conclusions would seem to indicate that without such an agreement the partnership lien would not exist. With all deference, we submit that this lien does not spring from express agreement, but is created by operation of law upon the partnership relation and the equitable necessities of the case, and that where real property has been acquired with partnership funds, or for the

uses of the partnership, or where the partners by their conduct or management indicate an intention to treat it as partnership property, and do so treat it, equity will, in furtherance of justice, so consider it.

*Hawley & Williams*, for Respondents.

The question to be determined is, whether in an ordinary mining company, such as that in the case at bar is found to have been, the relationship of proper partnership and the equitable lien peculiar to such relation exists between the members, in the absence of any express understanding of any nature as to the relationship existing, and in the absence of any agreement or contract whatever, that the interest of either in the claims was to be held subject to a lien for the common liabilities. Were the case at bar one of proper partnership, and the interest purchased by Depuy and Burrell of defendant Burt, held by him in trust for the purposes of such partnership, yet, Burrell being a *bona fide* purchaser, without notice of the character of the property, would take to the extent of one half the interest conveyed by Burt to himself and Depuy, a title discharged of the lien of the copartnership and of the claims of the joint creditors. (Story on Part. Sec. 358; Collyer on Part. 3d Edition, 120–122; *Dyer* v. *Clark*, 5 Metc. 580; *Hoxie* v. *Carr*, 1 Sumner, 182, 183; 8 Ohio Rep. 365; *Depuy* v. *Leavenworth*, 17 Cal. 262.)

But we contend that a proper partnership did not exist between the parties Duryea and Burt in the case at bar, and that the facts as found are wholly insufficient to raise such relation and the equitable lien incident thereto by implication. Appellant in support of his position cites Story on Partnership, Sec. 82, to the point that there *may* be a partnership in the working of a mine, and that in such cases Courts of equity apply the same remedial justice as they do to ordinary partnerships; that is to say, that working a mine *may* be the subject of *partnership*; and where a *partnership* is shown, although its subject be the working of a mine, the same remedial justice will be applied as in ordinary copartnerships. The

case of *Fereday* v. *Wightwick*, 1 Russ. & Myl. 45, cited by appellant, is not in point. In that case the parties had a mere chattel interest in the mine—being lessees. Besides, they were engaged in purchasing ore from other mines, and were manufacturing large quantities of iron, as well from pig iron and ore purchased as from ore taken from their leasehold lands. Lord Eldon, upon this array of circumstances showing trade and manufacture in connection with the chattel interest of the parties in the land, after much doubt and deliberation held that a partnership had subsisted.

*Jones* v. *Parsons*, 25 Cal. 100, also cited, has no application to the facts as found in this case. There the fact of *partnership* was alleged and found by the Court. No assertion of the existence of a partnership lien is found in the case until the sale of Burt to Depuy and Burrell. Now, in the absence of the assent of Burt to a partnership relation with Duryea— and no such assent appears, but on the contrary the Court finds there was no such assent on the part of either of the parties—we know of no rule of law or equity which will enable the plaintiff to declare the existence of a partnership and assert his lien after a sale of his co-tenants' interest in the property or before such sale. Partnership is the result of an agreement, and cannot be raised by a proceeding *in invitum*. (Story on Part. Sec. 5; Collyer on Part. 3d Ed. p. 5, Sec. 8.)

The fact that additional ground was purchased with the common funds of the parties could have no bearing in raising the presumption of partnership in the land so purchased. (Collyer on Part. 3d Ed. 130; *Phillips* v. *Phillips*, 1 Myl. and K. 649; *Townsend* v. *Devaynes*, 1 Russ. & M. 45.)

Again: in no case can the equitable lien peculiar to partnership exist between tenants in common of lands unless a proper partnership be first shown, as also that such lands are held for the purposes of the partnership. Now, admitting the truth of the doctrine that the equitable lien of one tenant in common upon the interest of his co-tenant attaches in all such cases, then, in a suit against such copartnership for a common liability, if service of process be had upon one member of such

firm, and judgment be had against all, as it may be under our practice, the whole of the lands owned by such partnership could be sold under execution issued on such judgment and the title pass by such sale. Wherever the lien of partnership exists, this result may be accomplished under our practice by a service upon one copartner in a suit against all. (Prac. Act, Sec. 32.) Yet this Court have decided in several cases, that as between members of an ordinary mining company this cannot be done; in other words, that the property is not joint, as *partnership* property certainly is, but is held as tenants in common. (*Wiseman* v. *McNulty*, 25 Cal. 230.)

By the Court, Currey, J.

This action was brought to dissolve a partnership alleged to have existed between the plaintiff and the defendant Burt, from the 1st of June, 1860, to the time of filing the complaint which was on the 25th of February, 1864, and to obtain an accounting between them and a sale of the partnership property for the payment of the partnership debts. The defendants, Depuy and Burrell, on the 5th of February, 1864, purchased of Burt his interest in a portion of the property owned by him and the plaintiff, which the plaintiff maintains was purchased by them subject to a partnership lien for the payment of the partnership debts then due. The Court before which the cause was tried found in substance the following facts:

First—That early in May, 1860, Burt and five other persons, of whom the plaintiff was not one, owned a part of the property described in the complaint.

Second—That afterwards, and at different times, the plaintiff purchased the interest of all these owners, except Burt, until in December, 1861, he had acquired the undivided five-sixths of the property, at which time the other undivided sixth of the same belonged to Burt.

Third—During the period from the 1st of May, 1860, to the 1st of December, 1861, the owners of the property as a

mining company acquired by several purchases other property, consisting of a ditch and mining grounds, which is a part of the property described in the plaintiff's complaint. These purchases were paid for out of the common funds of the company. The parties owning the property, worked the ground as a mining company, and used the water of their ditch in carrying on such work. The work was prosecuted by the parties interested both before and after the plaintiff and Burt became the only parties having an interest in the property.

Fourth—The profits obtained and the losses sustained in working the mines were to be shared among the parties in proportion to their several and respective interests. Such, at least, it is found, was the tacit understanding among the members of the company, though it is found that there was no written agreement or express understanding among or between the members of the company on the subject, nor any agreement or contract that the interest of either of them in the mining claims was to be held for the company's debts, nor that there should be any lien on the undivided interests of the different owners of the land for the company's liabilities.

Fifth—That after the plaintiff and Burt became the only owners of the property, they became indebted to third parties in about two thousand dollars, that about one thousand two hundred dollars of it was to be paid for running a tunnel on a part of the company's mining ground, but the tunnel was not completed or accepted when Burt sold and conveyed to Depuy and Burrell.

Sixth—After the plaintiff and Burt became the only owners of the property, the latter used a large amount of the water from the ditch on some mining ground of his own; and it is found by the Court that upon an accounting between them as to their company business, Burt was indebted to the plaintiff in the sum of one thousand five hundred and seventy-two dollars and fifty-five cents.

Seventh—That when Burt sold and conveyed to Depuy and Burrell, he informed Depuy that he was owing plaintiff seventeen or eighteen hundred dollars on their company

account, and that plaintiff claimed a lien for it. But that it did not appear that Burrell had any such notice.

Eighth—That at the time of such sale and conveyance Burt was insolvent and so had continued.

Upon the facts so found the Court came to the conclusion that as against Depuy and Burrell the plaintiff's complaint should be dismissed, and that as against Burt he should have a personal judgment for one thousand five hundred and seventy-two dollars and fifty-five cents, and judgment was accordingly so entered. The plaintiff applied to the Court to set aside the judgment entered against him, and for a new trial, which application was denied.

The defendants Dupuy and Burrell controverted by answer the existence of any copartnership between the plaintiff and Burt; and as the rights of the parties depend in part upon the solution of this question, it will be first considered.

It does not appear distinctly from the findings of the Court when the mining business was commenced by the several owners of the mining grounds involved in this controversy. They are called, in the finding of the Court, and by the counsel for the respective parties, in their arguments, a company, who worked these mining grounds in the usual manner of working mining claims in California. The company made purchases of mining ground lying adjacent to that already owned by it, for which payment was made out of the common fund of the company. This company originally consisted of six persons, of whom Burt was one, but the plaintiff was not then a member of it. In May, 1860, the plaintiff first became a party in interest in the mining grounds which the company then owned, and he continued from that time until December, 1861, to purchase interests therein, by which means all the original members of the company, except Burt, became divested of their interest in the property, and the plaintiff became the owner of the undivided five sixths of it. After the plaintiff and Burt became the only parties in interest, and constituted the company or firm, it is fairly to be inferred from the pleadings and finding that they continued to work

the mines as usual, and used the ditch as a means for the purpose. They shared the profits and losses of the enterprise in accordance with their respective interests in the property; that is, the plaintiff received five sixths of the profits, and Burt one sixth of the same, and the burdens and losses were borne by them in the same proportions. Though the Court does not find that a partnership was created by express agreement, yet it is found that by a tacit understanding between the parties they were to share the profits and losses of the enterprise according to their several interests.

To constitute a partnership between parties engaged in a business there must be a communion of profit between them. A communion of profit implies a communion of loss. (Coll. on Part. Sec. 18; *Green* v. *Smith*, 2 Black. 998.; *Dob* v. *Halsey*, 16 John, 40; Story on Part. Secs. 18, 19; 3 Kent, 24, 25.) It is not necessary that there should be an express stipulation between the partners to share the profits and losses, as that is an incident to the prosecution of their joint business. (*Barrot* v. *Swann*, 17 Maine, 180.) So far then the elements of a partnership among the different owners of the property of this mining company is found to have existed.

Mining partnerships are said to possess some features peculiar to themselves which distinguish them from ordinary trading concerns. Collyer, in his treatise on the law relating to mines, at page 88, says: "A question of some nicety sometimes arises whether persons working mines are trading partners, or mere joint occupiers of land, using the minerals as a part of its produce;" and he then states as a result of the cases "that this question will turn on the consideration, whether the land be obtained wholly or principally for the purpose of trading in the ore, or whether the selling of the ore be only incidental or appurtenant to the occupation of the land," and he observes that "when companies of adventurers have been formed for the purpose of mining, and obtained leases either of the land or the minerals, or license to work in pursuance of that object, the Courts of equity have long since recognized such associations as a species of trading partnerships." In *Skillman* v.

*Lachman*, 23 Cal. 203, it is said, "whatever may be the rights and liabilities of tenants in common of a mine not being worked, it is clear that when the several owners unite and co-operate in working the mine, then a new relation exists between them, and to a certain extent they are governed by the rules relating to partnerships. They form what is termed a mining partnership, which is governed by many of the rules relating to ordinary partnerships, but which has some rules peculiar to itself—one of which is that one person may convey his interest in the mine and business without dissolving the partnership." Mines are often and perhaps generally owned and worked by associations more numerous than ordinary trading partnerships. Accordingly, in the language of Collyer, mining partnerships were early recognized as differing from ordinary trading partnerships, in not being founded on the *delectus personæ*, from which principle the rights and obligations of ordinary trading partners are ordinarily derived; and he observes that "the dissolution of partnerships so numerous, by the death, bankruptcy, outlawry or felony of any one partner, would have been incompatible with that continuous working of a mine which is necessary to success. It would have been highly inconvenient if no partner had been allowed to part with his share without the consent of each of his copartners," and hence it was decided, after many doubts, that a mining partner had the right to assign and transfer his share without the consent of his copartners; and that neither such assignment nor the death or bankruptcy of the owner of an interest in the mining concern operated to dissolve the partnership. (*Fereday* v. *Wightwick*, 1 Russ. and Myl. 49.) Another peculiarity of a mining partnership noticed by the Court in *Skillman* v. *Lachman* is that one mining partner has not the power to bind his associates by engagements with third persons to the extent that an individual partner of an ordinary trading concern is competent to bind the firm of which he is a member. The reason for the distinction is because a mining partnership which is subject to changes in its membership, as already indicated, is not founded on the *delectus personæ*, while

an ordinary commercial partnership is—a difference which limits the powers of partners, for reasons which are obvious, to the performance of such acts in the name of the partnership as may be necessary to the carrying on of its business, or which are usual in like concerns. (*Ricketts* v. *Bennett*, 4 C. B. 686; *Dickerson* v. *Valpy*, 10 B. & C. 128.)

The plaintiff maintains that from the facts found a partnership lien existed in favor of the partnership for the debts of the firm, and also for advances made by the plaintiff beyond his share for the benefit of Burt; and that a lien for such debts and advances existed at the time of the sale and conveyance by Burt to Depuy and Burrell upon the interest so conveyed, and remained subsisting thereon when this action was commenced, and that the Court erred in deciding otherwise.

It may be laid down as a general principle that each member of a partnership has a specific lien on the partnership property, not only for the debts and liabilities due to third persons, but also for his own share of the capital stock and funds, and for all moneys advanced by him for the use of the concern. In the words of Lord Hardwick, " when an account is to be taken, each is entitled to be allowed against the other everything he has advanced or brought in as a partnership transaction, and to charge the other in the account with what the other has not brought in, or has taken out more than he ought; and nothing is to be considered his share but the proportion of the residue on the balance of the account." (Coll. on Part. Sec. 125 ; Story on Part. Sec. 97 ; *Buchan* v. *Sumner*, 2 Barb. Ch. R. 107.) The subjection of personal property of a partnership, constituting its capital stock, to the principle, stated, is generally of no difficulty ; but where the property employed in the partnership enterprise is real estate, held by the several partners as tenants in common, the question has been regarded as one of more embarrassment; mainly, we apprehend, because of the nature of the property itself and the law controlling its descent, and the inability of any one of the tenants in common to charge or dispose of any greater or other,

interest in such real property than that which he may have and hold.

Without entering at much length upon an examination of the English and American authorities on the subject, we may say that the doctrine is well established in America, that real estate purchased by partners, with partnership funds for partnership purposes, is at law held by them as tenants in common; but in equity it is deemed as held in trust as a part of the partnership property applicable, in the first place, exclusive to pay the partnership debts. (*Burnside* v. *Merrick*, 4 Metcalf, 541; *Hoxie* v. *Carr*, 1 Sumner, 104; Story on Part. Secs. 91, 92; *Jones* v. *Parsons*, 25 Cal. 104, 105; *Pierce* v. *Trigg*, 10 Leigh, 406; *Sigourney* v. *Munn*, 7 Conn. 11; *Buckley* v. *Buckley*, 11 Barb. 74, 76; *Buchan* v. *Sumner*, 2 Barb. Ch. R. 197, 206; *Divine* v. *Michum*, 4 B. Monroe, 488; *Dyer* v. *Clark*, 5 Metcalf, 562.) In the case last cited, at page 577, Mr. Chief Justice Shaw said: "It appears to us, that considering the nature of the partnership and the mutual confidence in each other which that relation implies, it is not putting a forced construction upon their act and intent, to hold that when property is purchased in the name of the partners, out of partnership funds and for partnership use, though by force of common law they take the legal estate as tenants in common, yet that each is under a consciencious obligation to hold that legal estate, until the purposes for which it was so purchased are accomplished, and to appropriate it to those purposes, by first applying it to the payment of the partnership debts, for which both his partner and he himself are liable, and until he has come to a just account with his partner. Each has an equitable interest in that portion of the legal estate held by the other, until the debts, obligatory on both, are paid, and his own share of the outlay for partnership stock is restored to him." And in *Howard* v. *Priest*, the same learned Judge decided that real estate thus acquired is held in trust, "each holding his property in trust for the partnership, until the partnership account is settled, and the partnership debts paid." (Id. 585.)

In *Buchan* v. *Sumner*, Chancellor Walworth, in an elaborate opinion in which he reviewed. the English and American cases on the subject, considered the American decisions in relation to real estate purchased with partnership funds, or for the use of the firm, as establishing these two principles : "First—That such real estate is, in equity, chargeable with the debts of the copartnership, and with any balance which may be due from one copartner to another upon the winding up of the affairs of the firm. Second—That as between the personal representatives and the heirs at law of a deceased partner, his share of the surplus of the real estate of the copartnership which remains after paying the debts of the copartnership, and adjusting all the equitable claims of the different members of the firm as between themselves, is considered and treated as real estate, (2 Barb. Ch. 200, 201 ;) and at page 206 he said : "Although a Court of equity considers and treats real property as part of the stock of the firm, it leaves the legal title undisturbed, except so far as is necessary to protect the equitable rights of the several members of the firm therein." In *Pierce* v. *Trigg*, the Court of Appeals of Virginia held that land purchased by two partners with partnership funds, for partnership purposes, and used as part of the stock in trade, is to be regarded in equity as partnership property ; and though, if the conveyance has been made to both partners, there will, upon the death of one, pass to his heirs a legal title, yet the whole beneficial interest devolves upon the survivor, and he may sue the heirs, compel a sale and dispose of the proceeds as he would of the personal estate of the firm. The principles declared in these cases, it is said by Collyer, "are founded in sound policy and obvious justice, and the correctness of them appears to be incontestible." (Coll. on Part. Sec. 135, and of this opinion was Chancellor Kent, 3 Kent's Com. 39.) The case of *Jones* v. *Parsons*, 25 Cal. 100, accords in doctrine with the cases from which we have quoted.

In *Smith* v. *Jackson*, 2 Edw. Ch. 28, the Vice Chancellor held that, though real estate be purchased with joint funds

for partnership purposes, there is no survivorship as to the real estate, and that upon the death of one of the partners, his share, as a tenant in common, descends to his heirs, unless it is agreed by the partners themselves to consider it as personalty, and then the agreement works the change. That when real property is acquired by partners with partnership funds, and used for partnership purposes, it will not be deemed partnership property, liable to partnership debts, by the mere taking of the deed in the joint names of the partners. To render it partnership property, and liable as such, he held it must appear that it was acquired for the purposes of the partnership by some express act or understanding of the partners; in which case equity would apply the lands to pay the partnership debts. This decision, and others to the same effect, Chancellor Kent observed, appeared to him to be a sacrifice of a principle of policy, and, above all, a principle of justice, to a technical rule of doubtful authority. There is no need, he said, of any other agreement than what the law will necessarily imply from the fact of the investment of partnership funds by the firm in real estate for partnership purposes. If the partners mean to deal honestly they cannot have any other intention than the appropriation of the investment, if wanted, to pay the partnership debts. (3 Kent's Com. 39, note.) Chancellor Kent evidently favored the doctrine held by Lord Eldon in *Selkrig* v. *Davies*, 2 Dow Parl. R. 231, 242, and in *Townsend* v. *Devaynes*, reported in 1 Mont. on Part. 97, and by Sir John Leach in *Fereday* v. *Wightwick*, 1 Russ and Myl. 45, and *Phillips* v. *Phillips*, 1 Myl. and K. 649, and *Broom* v. *Broom*, 3 Myl. and K. 433, that all property involved in a partnership ought to be considered as personalty, even in the absence of any special agreement in respect to it. In the case of *Thornton* v. *Dixon*, 3 Bro. C. C. 199, Lord Thurlow held that in the absence of any agreement or other act affecting its general character, real estate, held as part of the partnership property, retained its original character as real estate, and upon the death of one of the partners, his share passed to his heir or devisee, and Sir William Grant, (in *Bell* v. *Phyn*, 7

Vesey, 453, and *Belmain* v. *Shore*, 9 Vesey, 501,) adopted the same opinion. While the doctrine of the cases is somewhat conflicting, we think the principles stated by Chancellor Walworth, in *Buchan* v. *Sumner*, as rules deduced from the American decisions, are a sound and just exposition of the law on the subject, (2 Barb. Ch. 200, 201,) and as a corollary of these rules, the real property of the partnership may be considered and treated as part of its capital stock, leaving the legal title undisturbed, subject to the law controlling as to its alienation, descent and distribution, except in so far as may be necessary to protect the rights of creditors and of the several members of the firm. We do not think the jurisdiction of a Court of equity depends for its exercise, subjecting real estate thus acquired and used by a partnership to ,the payment of the debts of the concern upon an express agreement of the parties to that effect. That real property shall be subject to the purposes for which it was purchased or brought into the partnership, involves the assumption that the partners understood among themselves and intended that it should be held in trust for the uses of the partnership by the several tenants in common. This understanding may be implied from the acts or conduct of the parties. The circumstance that property, whether it be real or personal, is invested in a partnership enterprise, affords cogent evidence of intention that it shall constitute a part of its capital stock. Therefore we do not deem it essential that such intention must be manifested by an express agreement. The agreement is implied from the circumstances, by the rules of law and logic; and it is only equitable to the creditors and members of the partnership that the property should not be withdrawn until the affairs of the association may be adjusted and each of its members shall have his just due. (3 Kent Com. 39, note.)

A portion of the real estate involved in the controversy, as we understand the case, was acquired by the persons originally interested prior to their actually engaging in the business of mining, and it may perhaps be supposed the authorities cited do not therefore apply. If such mining ground was obtained

by the parties solely for the purpose of extracting gold from it, and for that object was brought into the partnership as its capital, it must be regarded as partnership property in the qualified character already expressed. The land being obtained for the sole object of mining, and invested in the mining partnership, it is impossible on principle to distinguish it as resting upon any other footing in its relation to the partnership than mining land acquired by the partnership for mining purposes after the joint enterprise is fully in operation. (*Crawshay* v. *Maule*, 1 Swanst. 523; Coll. on Mines, 88; Rockwell on Mines, 578.) Mr. Rockwell, after noticing what was said by Sir John Leach in *Fereday* v. *Wightwick*, observes that " it may be concluded that when persons acquire interests in lands apparently for the sole purpose of working the mines in them, they must be considered as entering into a commercial partnership. There does not appear," he continues, " to be any ground for distinction in such cases, if the parties have even acquired a permanent and absolute interest in the property." But he submits it as a general rule in such cases that " there must not only be an express intention to work the mines, but this object must have been either solely contemplated by the parties, or of such paramount consequence as to effectually overbalance any other advantages anticipated from the estate." This, in our judgment, refers the rule to a principle just in itself and easily to be understood.

In support of the right of the plaintiff to the relief which he seeks, as well as to the doctrines which, it may be, are already sufficiently sustained by the foregoing authorities, we may refer more at length to the judgment of the Court in the case of *Fereday* v. *Wightwick*. From the report of that case it appears that six persons had taken a lease for years of mines, and also another lease of the surface of the property, and had worked the mines as a joint concern. One of them mortgaged his interest or share for money borrowed, and then became bankrupt, at which time he was greatly indebted to the concern, of which he had been the manager. A bill was filed by such of the original partners as continued to be interested in

the concern, and by other persons who were either representatives of deceased original partners or claimed as purchasers of shares. The plaintiffs sought a decree directing the share of the partner, who had become bankrupt, to be applied in repaying the debt due from him to the partnership. The defendants, who claimed under the bankrupt partner, insisted that the common principles of partnership were not applicable to the case of mines, which were of the nature of real property. In deciding the case, the Master of the Rolls, Sir John Leach, said : " The mines and surface were used with a communion of expense and a communion of profit. The first question is, whether this is partnership property, liable to be sold and disposed of to pay the partnership debts ; and whether a partner, having sold part of his share, his interest is to be considered, subject, in the first place to repayment of what is due from him to the partnership. This question is concluded by authority, but I am willing to decide it upon principle. Mining concerns are to some purposes trading concerns, but they are not so to all. They are not so in this particular, viz : that they are not, as an ordinary partnership trade, subject to dissolution on the death or bankruptcy of any of the partners, and the shares are transferable without the consent of the partners. In these particular instances they have not all the incidents of a trading concern ; in other respects, it has been repeatedly held that they have. Now, it is a universal principle in regard to all property, whether real or personal, acquired for the purpose of a partnership, that property so acquired, is, upon the dissolution of the partnership, subject to sale and accounts between the partners, and to payment of the partnership debts—that is a universal principle. To apply the rule to this particular case, the property was acquired by these partners for the purposes of the partnership concern. Therefore, though in the nature of real property, it is subject to all the debts of the partnership, and subject to the debts of one of the partners incurred in the ·administration of the property. There can be no doubt, therefore, that the plaintiffs have a right to make this claim." (Taml. 250 ; Coll. on Mines, 128.)

74

In the case before us, the plaintiff had a lien upon the partnership property for the debts due the creditors of the concern, and also for moneys advanced by him for its use, and such lien subsisted after the conveyance made by Burt to Depuy and Burrell, unless it was lost by reason of their having become purchasers in good faith, for a valuable consideration, without notice on their part of the existence of such lien. In their answer they claimed the benefits accruing to innocent purchasers in such cases.

It appears from the finding of the Court that Depuy had actual notice at the time from Burt that he was in debt on the partnership account in a considerable sum, though it did not appear that Burrell had such notice. It also sufficiently appears that at the time of Depuy's and Burrell's purchase, the plaintiff and Burt were prosecuting the mining business upon these mining grounds. While we do not undertake to say in this place that one partner may not convey or charge his interest in mining ground, on his private account, to the extent of his legal title, provided the purchaser or mortgagee deals with him in good faith and without notice of the partnership rights, and there is nothing in the transaction or in the circumstances connected with it or the subject matter of it from which notice might be inferred, (Coll. on Part. Sec. 135,) yet if a purchaser or mortgagee in such case is apprised of facts sufficient to put him on inquiry and to lead him by a diligent investigation to a discovery of the truth, he will be deemed to have notice of the truth as it may be. Here the defendants Depuy and Burrell were necessarily aware of the working of these mining grounds by plaintiff and Burt as mining partners, and it was their duty to ascertain, as they might have done, the condition of the affairs of the concern, and whether or not there existed upon the property which they purchased a lien resulting from the relation of the partners to each other and to the creditors of the partnership. Besides this, one of the parties had actual notice of the existence of the partnership lien of the plaintiff. They must therefore be deemed to have taken the property *cum onere*—subject

to an adjustment of the account between the partners and the payment of the partnership debts, and also of the amount due the plaintiff on the partnership account.

The judgment must be and is hereby reversed, and the cause remanded for further proceedings.

Sawyer, J., concurring.

The determination of the rights of the parties to this suit depends upon the question whether the property was held in the ordinary mode of holding ditches and mining ground in this State, as tenants in common, or held as partnership property in the strict sense in which these terms are used in relation to mercantile transactions. I have no doubt that mining claims, ditches and lands may be held as partnership property, as well as any other, and when so held, for the purposes of discharging the partnership obligations or settling the partnership affairs, that such property will be subject in equity to all the incidents of other partnership property. The title to claims may be held by parties as tenants in common, while there may be a strict partnership for the purpose of working them; or there may be a partnership both in the ownership and in the working of the claims. Whether the relationship of the parties is one or the other, or neither, must depend upon the facts of each particular case. These principles are distinctly indicated in *Bradley* v. *Harkness*, 26 Cal. 76. Parties purchasing the interest of one of the copartners in partnership property acquire such interest only as the vendor had, and that is, his share of the residue, after the affairs of the concern are wound up and the debts paid, including the balance due one partner from the other on the partnership account. *(Jones* v. *Parsons,* 25 Cal. 104.) And this rule in equity applies to real estate constituting a part of the assets of the firm, as well as to personalty. True if the record legal title to realty be in one of the partners alone, and he should convey to an innocent party for a valuable consideration without notice of the trust, such party might take a title under the recording Acts; but

whether he would or would not, would depend upon principles having no peculiar relation to partnership rights. In such case, also, all the rules of law relating to possession, as affecting the question of notice, would, doubtless, be applicable as in other cases between individuals having no connection with partnership transactions. And these rules would, doubtless, obviate many of the difficulties suggested by the learned Judge who tried the case.

The finding in this case is an opinion rather than a finding, and liable to the criticisms suggested in *Hidden* v. *Jordan*, 28 Cal. 305; but from the facts stated, I think there was a partnership in working the mines, and that a large portion at least of the property in question was partnership property. Much of it—including a considerable portion of the claims and of the water rights—was purchased by the two parties interested with the common funds resulting from the joint working of the claims and from the common proceeds of sales of water. The profits and losses were to be shared according to their respective interest. This state of facts, without any specific agreement modifying the rights of the parties, would constitute the property so purchased, and the proceeds of the same, and of their joint labor, partnership property. As to this portion of the property the judgment is, therefore, erroneous.

It may be that the claims before owned and purchased in severalty in undivided interests were held by them throughout their connection as tenants in common. Whether they were or were not is not distinctly found as a fact, and we should not be justified in determining the question from the facts found. Those interests were, doubtless, originally purchased as tenancies in common; but whether from the evidence before the Court, and the manner in which the parties blended their interests in those claims with their subsequent purchases and in working the whole, the Court would be justified in finding that they put in the claims originally held, with the new purchases as partnership property, it is not our province now to determine. This will be a fact to be determined on the new trial. If so, it became partnership property and subject to

all the incidents of such property. If not, and it was originally held and still continues to be held as a tenancy in common, then it was not partnership property, and the plaintiff has no claim to have the sum due him from his cotenant or copartner in other matters charged upon it.

The complaint alleges a partnership, and seeks a dissolution and settlement of the affairs of the concern. It avers all the property to be partnership property. On the next trial it will devolve upon the Court to determine the facts whether a partnership existed or not; and if so, whether the whole, or only a part, and in that event, what part of the property described in the complaint is partnership property, and, unless other equities appear requiring a different disposition, to subject that part to plaintiff's demand in case any balance shall be found due him on partnership account.

For these reasons I think the judgment must be reversed and the cause remanded.