# CHARLESTON

## BLACKMARR *v.* WILLIAMSON.

Submitted February 2, 1905.   Decided February 21, 1905.

1. PARTNERSHIP—*Sale of Partner's Interest.*
      One of the partners in a mining partnership may convey his interest in the mine and business without dissolving the partnership. (p. 253.)

2. PARTNERSHIP—*Majority Interests Control Partnership Operations.*
      When members of a mining partnership cannot agree in management those having a majority interest control its management in all things necessary and proper for its operation. *Childers* v. *Neely,* 47 W. Va. 70. (p. 254.)

3. PARTNERS—*Rights of Partners—Sale of Partnership Interest.*
      A member of a mining partnership may sell his interest therein to whomsoever he may without the knowledge or consent of his co-owners. (p. 254.)

4. PARTNERSHIP—*Dissolution by Suit—Allegations of Bill.*

    In order to dissolve a mining partnership by decree in equity to· sell the partnership property, the bill must allege clear and good grounds therefor.   (p. 255.)

Appeal from Circuit·Court, Tyler County.

Bill by F. L. Blackmarr · against J. M. Williamson and others.   Decree for plaintiff and defendants appeal.

*Reversed.*

THOMAS P. JACOBS and FRANK V. IAMS, for appellant.

F. L. BLACKMARR, *pro se.*

McWHORTER, JUDGE:

J. M. Williamson, Adelia Williamson, Harry Ihrig and F. L. Blackmarr were the joint owners of the working interest of a certain oil and gas lease upon the A. R. Williamson farm of eighty-four acres in Tyler county, held by them respectively in the following proportions: J. M. Williamson four-sixteenths, Adelia Williamson two-sixteenths, Harry Ihrig three-sixteenths and F. L. Blackmarr seven-sixteenths. The said parties were operating the said lease for the·production of oil and gas and had found and produced oil in paying quantities and receiving the production therefrom in the proportion named.   At the March rules, 1904, Blackmarr filed his bill in the clerk's office of the circuit court of Tyler county against the other three defendants alleging that there were two wells upon said lease that had been drilled for oil and gas; that the oil produced from said lease was run into the Eureka Pipe Line Company's lines to A. R. Williamson, the lessor, one-eighth royalty and the seven-eighths to the four parties named, in the proportions stated; that the owners of the lease agreed to further develop the same and to drill other wells thereon for oil and gas and had drilled thereon three other additional wells, numbers 3, 4 and 5 and cleaned out and equipped wells numbers 1 and 2; that in drilling said new wells and cleaning out and operating the new wells upon said lease and equipping them they expended between thirteen and fourteen thousand dollars which was contributed by them in proportion to the interests owned by them, respectively; that the production from said wells had declined; that owing to the discovery of large pools

or fields of oil in the states of Kansas and Texas and in Indian Territory.the market price of oil had declined and was liable to decline more, and that the production of oil was declining upon said lease and the same was becoming of less market value each month; that plaintiff was not willing to expend any more money upon said lease and that it was for the best interest of plaintiff that the mining partnership operating said lease be dissolved and the mining partnership property (as it could not be partitioned in kind) be sold and the debts which might exist be paid and the proceeds be divided among the members of the mining partnership in proportion to their interests therein; that when the production of oil upon said lease was at its highest and the market was at $1.85 per barrel plaintiff repeatedly requested the other partners to join with him in selling said lease as a whole for the highest and best price that could be obtained for it in the market, for the reason that said production would decline; but they refused to join in the sale of said mining partnership property; that there was a lack of harmony between said partners as to the further operating of said lease and prayed the dissolution of said partnership, and that the property thereof be sold and the debts existing at the time of sale and costs of sale be paid out of the proceeds of the property and the balance divided among the partners in proportion to their interests, and for general relief.

The defendants filed their demurrer to plaintiff's bill, because the same was not sufficient in law, and that the bill contained no equity, and answered the bill, admitting that the leasehold estate was held by the parties in the proportions set out in the bill. Defendants denied the material allegations of the bill and denied that plaintiff ever made any request of them to join in sale of said property, but on the contrary one of the defendants expressed to plaintiff a willingness to purchase his interest in said property, being seven-sixteenths, at a price which plaintiff had fixed upon the same, that is, one thousand dollars per sixteenth, and that since that time the other defendants had offered the said Blackmarr for his interest in said leasehold at the rate of eighteen or twenty thousand dollars for the whole; denied any lack of harmony between said mining partners as to the operation of said property which would impair the operation

thereof; that all bills against said concern for developing and operating expenses had been paid in full and there existed no indebtedness against said concern for developing expenses; ·denied that any grounds, whatever, existed for the dissolution of said mining partnership; that respondents had no ·objection, if plaintiff desired to sell his interest, to whomsoever he would and had no objection to his getting all the money out of such sale that he might be able to get, and had no objection to his remaining in said partnership; that they had no ability, if they so desired, to prevent him from making a private sale of his interest in said concern; that whatever differences of opinion might have theretofore existed in the practical work of operation of said leasehold had been adjusted upon a comparison of opinions and the work of development had gone regularly along and the property had been developed economically and rapidly and had been made to produce all it could be made to produce by anyone; that plaintiff, although not entitled to do so, had taken full charge ·of the purchasing of material for developing, placing it upon the premises and had practically given directions and controlled the same, and his directions had been in the main followed, and that they were of opinion that a public sale of the same would sacrifice instead of promote the interests of the respective owners.

Depositions were taken and filed in the cause and the cause was finally heard on the 17th day of August, 1904, upon the bill and answer of the defendants, and general replication thereto, and upon the demurrer and the depositions, when the court overruled the demurrer and held that the plaintiff was entitled to the relief prayed for in his bill, and decreed the dissolution of the partnership and the sale of the leasehold property. From which decree the defendants appealed, and assigned as error the overruling of the demurrer to the bill and in decreeing the sale of the leasehold property at public auction for the purpose of dissolving the partnership and decreeing a division of the proceeds of the sale thereof, and also in appointing the complainant Blackmarr as one of the commissioners to make sale of the property.

There is no dispute between the parties as to the fact of the existence of a mining partnership between the plaintiff and the defendants. Such partnership does not rest upon the

same principles as the ordinary partnership. There is not necessarily any contractual relations between them. There are many definitions of what is required to constitute a partnership. In 22 Am. & En. Enc. L. (2d Ed.) 13, it is given thus: "Partnership is the relation existing between two or more persons who have contracted together to share, as common owners, the profits of a business carried on by all or any of them on behalf of all of them." And at page 15 *Id.* it is stated as a rule: "In an ordinary partnership the contract creating it must have been entered into by all the partners. It is only by the unanimous consent of all the persons concerned that they become partners. A third person cannot be introduced into the concern as a partner without or against the consent of a single member. This principle is what is called *delectus personarum* and it is a fundamental principle of partnership law. This rule in no sense applies to mining partnerships." At page 226 *Id.* the definition and nature of the last named partnership is stated as follows: "A mining partnership exists between the tenants in common of a mine who work it together and divide the profits in proportion to their several interests. Ownership of shares or interests in the mine is an essential element of a mining partnership. The relation does not exist between the owners of a mine and one who under a contract with them works a mine for a share in the profits or proceeds. Mere profit sharing will not create a mining partnership.    *    *    *    a mining partnership differs from an ordinary partnership in the fact that no contract between the parties is necessary to create it, that there is no *delectus personarum*, so that the death of a member or the transfer of his interest does not operate as a dissolution and that there are no rights of survivorship. Because of the absence of these features mining partnerships have been said not to be true partnerships but rather a cross between tenancies in common and partnership proper." In *Duryea* v. *Burt*, 28 Cal. 569, it is held: "One of the partners in a mining partnership may convey his interest in the mine and business without dissolving the partnership." And in *Skillman* v. *Lachman*, 23 Cal. 198, (83 Am. Dec. 96), where it is held as an additional rule to that just cited from *Duryea* v. *Burt*: "That the law does not imply any authority either to a member of such partnership or to its managing agent to

bind the company or its individual members by a promissory note or a contract of indebtedness executed in the name of the company but it is incumbent on the party claiming to hold the company for such indebtedness to show that the person executing or contracting the same in the name of the company had power and authority to do so."

This question of mining partnership is discussed and many authorities cited in a note at the end of *Skillman* v. *Lachman*, 83 Am. Dec., beginning at page 103. It is also discussed at some length in *Childers* v. *Neely*, 47 W. Va. 70. There it is held, (syl. pt. 2): "When members of a mining partnership cannot agree in management, those having a majority interest control its management in all things necessary and proper for its operation." It is there also held, (syl. pt. 3): "A sale of his interest by a member of a mining partnership to another member or a stranger does not dissolve the partnership, as in ordinary partnerships." In that case the partnership was dissolved, good cause for such dissolution being shown. As stated in the opinion: "The bill demanded a dissolution. It showed abundant cause and the evidence shows abundant cause of dissolution." The evidence showed violent disagreements and dissensions making it plain that the business was hopeless of success and prosperity and the interest of all partners demanded absolute dissolution at the hands of the law. In case at bar it is alleged in the bill "That there is lack of harmony between said mining partners as to the further operating of said lease." This is the only allegation of disagreement or dissension among the members of the partnership—a lack of harmony as to the further operating of said lease. The evidence shows that the business was largely, but not wholly, under the control and management of the plaintiff and appellees.

Plaintiff purchased his seven-sixteenths interest in said lease, as far as the record shows, without the knowledge or consent of his co-owners, and they have since been working in harmony, except upon the question of further development. Plaintiff has a perfect right to get rid of his interest in the same way that he obtained it—simply by selling out to whomsoever he may, without even the knowledge or consent of his co-owners. The bill fails to show any reasonable ground for a dissolution of the partnership by the sale of the

property under decree.   The other owners all insist that a public sale under decree of the court would be greatly to the prejudice of their interests.   It would appear to be inequitable for a stranger to buy an interest in a concern of this kind and then without the most cogent reason, to enforce the sale of the property of his co-owners against their consent and to the prejudice of their interests.   They have invested their money in property and are seeking to operate it to their profit and have faith in the enterprise and it does not appear to be running at a loss.   The bill fails to show cause for the intervention of a court of equity and for that reason the demurrer should have been sustained, while the evidence fails to sustain a bill for the relief asked, even if the allegations had been sufficient to warrant the granting of relief.

It is unnecessary to consider the other assignment of error. The decree of the circuit court will be reversed and the bill dismissed.

*Reversed.*