[No. 2,228.]

## PETER DECKER AND J. H. JEWETT *v.* M. D. HOWELL, BENJAMIN HAYNES, AND R. M. TURNER.

STRICT PARTNERSHIP IN MINES AS DISTINGUISHED FROM "MINING PARTNERSHIP," SO CALLED.—Where two persons entered into an agreement to engage together in a mining adventure, under a firm name, and to share the profits and losses equally, and as a firm they purchased a mine, and paid a note given in the firm name for a portion of the price; *held*, that the contract was one of partnership, in the ordinary sense, as distinguished from what is known as a "mining partnership," and that either partner had the same authority to bind the firm as if it were an ordinary trading partnership.

EXCEPTIONAL RULE AS TO "MINING PARTNERSHIPS" CEASES WHEN REASON THEREFOR CEASES.—The rule that in "mining partnerships" one partner has no authority to bind the firm by a promissory note is based upon the reason that in such partnerships there is no *delectus personæ*, and that, consequently, the membership is continually subject to changes beyond the control of the partners; but there is nothing in the nature of mining which forbids a contract of strict partnership; and when it appears that the confidential relations of an ordinary partnership are established, and the firm not subject to the intrusion of other partners at will, the reason of the rule fails, and with the reason the rule itself.

PROMISSORY NOTE OF STRICT MINING PARTNERSHIP.—Where Howell and Haynes entered into a strict partnership for the purpose of purchasing, holding, and working a mine, and while such partners Howell gave a firm note for money borrowed in the name and for the use of the firm, and afterwards conveyed all his interest to Haynes; *held*, that the note was valid as a firm note, and could be collected of Haynes.

APPEAL from the District Court of the Tenth Judicial District, Yuba County.

This was an action upon a promissory note for three thousand dollars, made in the name of "Howell & Haynes" to R. M. Turner, and by Turner indorsed to plaintiffs. Howell and Turner made default. Haynes answered separately, setting up, among other things, that "Howell & Haynes" was a partnership formed for the sole and exclusive purpose of mining, and that Howell had given the

note without Haynes' knowledge or authority, and in fraud of his rights. On the trial the Court below found the facts substantially as stated in the opinion; but in addition thereto found that after the making of the note Howell conveyed all his interest in the partnership to Haynes, in consideration that he would pay certain claims, including the note in question. As conclusions of law the Court found:

First—That the defendants Howell & Haynes were co-partners in the working and management of their mines and mill.

Second—That a copartner in a mining partnership has not in any case implied authority to borrow money on the credit of the partnership, nor to execute or deliver a promissory note in the partnership name for any purpose, and, consequently, that the defendant Howell had no implied authority to execute or deliver a note in the partnership name to the plaintiffs for the money borrowed from them, and that the fact that the money borrowed was used to pay the wages of the laborers on the mine, and for supplies therefor, can make no difference.

Third—That the defendant Haynes, by his ratification of the acts of the defendant Howell in the making and delivery of the note in suit, became, and now is, liable to pay to plaintiffs the amount due on said note.

As a further conclusion of law, the Court found that the plaintiffs were entitled to judgment in the sum of four thousand nine hundred and sixty-four dollars and twenty-five cents, for principal and interest on the note, and rendered judgment accordingly. Defendant Haynes moved for a new trial, which being denied, he took this appeal from the judgment and order.

*James C. Cary* and *Charles E. Filkins*, for Appellants.

The issue raised by the pleadings was as to the power of Howell, by the execution of the note in suit, to bind the

firm of Howell & Haynes. The Court below found that he could not. On this finding the defendant Haynes was entitled to judgment; but the Court proceeded to work out a judgment against him by raising another issue, not made by the pleadings or the parties. The finding upon which the judgment was based was excepted to; and we contend that there was no issue or evidence to sustain it.

It is, however, contended that the partnership between Howell and Haynes was a trading or commercial partnership, as distinguished from a mining company, and that Howell, therefore, had implied authority to borrow money and give notes. But it is submitted that this is not an open question, for the reason that the Court below found upon the whole case that the business of Howell & Haynes was mining, and that Howell had no authority as a copartner in the company to borrow money and execute notes. No exception was taken to this finding, and it cannot now be questioned.

The plaintiffs well knew the nature of the business of Howell & Haynes; and when Howell proposed to give this note for borrowed money, and pledged the credit of the firm for its payment, they were put upon inquiry as to his power. Had they made inquiry, they would have found that the mode in which the business of Howell & Haynes had been conducted was against the right of Howell to borrow money in the name of the firm; that he never had exercised or assumed that right in any one instance; that he had never made but one note in the firm name, and that was for the purchase money of the mine, and under instructions to arrange for the payment as best he could; that when money was required for the mine he drew on Haynes' agent for it, and in his own name; that the mine was to be worked on a cash basis; that Haynes was able to supply all the money needed, without borrowing; that the mines had failed at the

time Howell made his application for a loan, and that he was insolvent.

The finding that Howell had no power or authority to give a note in the name of the firm, was fully sustained by the decisions in *Skillman* v. *Lachman,* 23 Cal. 206; *Bradley* v. *Harkness,* 26 Cal. 76; *Duryea* v. *Burt,* 28 Cal. 577; and *Settembre* v. *Putnam,* 30 Cal. 490.

*W. C. Belcher* and *G. N. Swezy,* for Respondent.

It makes no difference whether the conclusions of law of the Court below are correct or not, if the facts of the case and the conclusions which the law itself makes, and which the Court ought to have made as applicable thereto, warrant and sustain the judgment.

That the first conclusion is correct, so far as it goes, is beyond controversy. When two or more parties are engaged together in working mines for their joint account, it is no longer an open question whether or not the associates are copartners, and constitute a copartnership. They may own the mine as tenants in common, and in unequal interests, and divide the profits and share the losses of working in proportion to their several interests, but the moment they begin the working for their joint account they become copartners. This copartnership may be general or special, and whether general or special, will depend upon the circumstances of each case. (See Story on Part. Sec. 82; Bainbridge on Mines, 332; Arundel on Mines, 27; Rockwell on Mines, 576; Collier on Mines, 88; Collyer on Part. Sec. 3.)

The above authorities would seem to leave no doubt that two or more persons may form a partnership for the business of mining, in which they might have all the benefits, enjoy all the rights and privileges, and subject themselves to all the liabilities of commercial partnerships—in which there should be found all the characteristics, and to which should be attached all the incidents of commercial partnerships.

Such a partnership may be created by deed, by parol agreement, or "by just presumption from the acts of the parties." And if it be possible that a partnership possessing all the characteristics, and subject to all the liabilities of commercial partnerships, can be created for a mining adventure, then we think that the partnership between the defendants, Howell and Haynes, was one of that class. If there is any one element wanting, we do not know what it is.

The *delectus personæ,* so frequently mentioned as an essential element in commercial partnerships, and as distinguishing them from certain kinds of joint stock and mining associations, is not wanting here. Indeed, it was the chiefest inducement with Haynes, to engage in this business with which he was personally unacquainted, that he could be associated in the business with Howell, and have the benefit of his skill and experience.

The cases of *Skillman* v. *Lachman,* 23 Cal. 198; *Duryea* v. *Burt,* 28 Cal. 569; *Dougherty* v. *Crary,* 30 Cal. 290; *Settembre* v. *Putnam,* 30 Cal. 491, and *McConnell* v. *Denver,* 35 Cal. 365, do not determine that a mining partnership cannot be a commercial partnership, or that mining partners do not and cannot have implied authority to borrow money or give notes in the name of the partnership. All these cases carefully preserve the distinction that the partnerships of which they treat are the ordinary mining partnerships in which the controlling element — the *delectus personæ* — is wanting, in which the shareholders are generally numerous, and may, at their pleasure, transfer their interests and introduce new members. Not one of them holds or intimates that a mining partnership may not be formed which would in all respects be governed by the rules of commercial partnerships, and in which the members should possess all the rights, and be subject to all the liabilities of such partnerships.

The Court below was wrong in its second conclusion of law, and should have found that Howell had implied author-

ity to borrow the money and make the note in the name of the partnership. The finding was, doubtless, based upon the authority of *Skillman* v. *Lachman*, and kindred cases; but, as we have shown, the doctrines there laid down are applicable to a different class of partnerships, and not to what the facts here presented and found by the Court show this of Howell & Haynes to have been.

By the Court, NILES, J.:

The defendants, Howell and Haynes, entered into an agreement to engage together in a mining adventure, under the firm name of "Howell & Haynes," for the purpose of purchasing, holding, and working certain mines. The profits and losses were to be shared equally. Howell, a practical miner, was to contribute his skill and personal services in the conduct of the business; Haynes was to contribute money. The mine was purchased by and conveyed to the partners. A note of the firm was given for a portion of the purchase money, and afterwards paid without objection by either. The mine was worked for a year under the management of Howell, who then conveyed his interest to Haynes. Prior to this conveyance, Howell borrowed of the plaintiff, in the name of the firm and for its use, the money for which the note in suit was given.

The main question in this case is whether Howell had authority, either express or implied, to make the note in suit.

It is well settled that in the case of an ordinary trading partnership either partner may bind the firm by note.

It is equally well settled by the decisions of this Court that no such authority exists in the case of an ordinary mining partnership. The decision in *Skillman* v. *Lachman*, 23

Cal. 206, and the subsequent cases, place this exception to the recognized rule as applicable to trading partnerships, upon the ground that in mining partnerships the *delectus personæ* does not exist, and the membership is continually subject to changes beyond the control of the partners. But it is no disparagement to the salutary doctrine of these cases to hold that a strict partnership may exist in the working of a mine which shall be subject to the incidents of a trading partnership. There is nothing in the nature of the business of mining which forbids such a contract. If by the terms of a contract of mining partnership it appears that the confidential relations of an ordinary partnership are established, and that the firm is not subject to the intrusion of other partners at will, the reason of the rule that restricts the powers of a single partner fails. The parties are strictly partners, not by reason of their common ownership of the mine, but as the result of their own agreement. The cases of *Bradley* v. *Harkness*, 26 Cal. 76, and *Duryea* v. *Burt*, 28 Cal. 587, recognize this principle.

In Bainbridge on Mines, 439, the author says : "But there are mining concerns which are carried on by partners, few in number, subject to mutual selection, and therefore more closely connected by mutual confidence. * * * There may be no difference between firms of this kind and those engaged in any other distinct business as general partners, and those who are not working partners may not be the less liable to the general consequences of such a partnership."

I am of opinion that the agreement between Howell & Haynes was a contract of partnership in the ordinary sense. Each exercised his choice in the selection of the other as his copartner. If either had conveyed his interest in the mine to a stranger, the purchaser would not, by virtue of the sale, be subrogated to his rights under the agreement. The purchaser and remaining partner would then become tenants in

common of the mine and in its working, subject to the rules applicable to an ordinary mining partnership.

Judgment affirmed.

Mr. Justice SPRAGUE did not participate in this decision.