[No. 1441, May 5, 1912.]

J. G. DAILY and F. F. VILLAREAL, Co-partners, ·doing business under the firm name and style of the Zack Metal Company, Appellees, v. GEORGE E. FITZGERALD, NATHANIEL C. FOSTER and FRANK A. HELMER, individually and as co-partners, doing business under the firm name and style of the Torpedo Copper Company, et al., Appellants.

## SYLLABUS (BY THE COURT).

1. Every inference not contrary to the evidence or otherwise appearing to be unreasonable will be drawn from the facts found by the court, and in case of doubt that presumption will be presumed correct which supports the judgment.

2.  The court will not disturb findings of fact, where there is any substantial dispute upon the evidence.

3.  Every agreement for the working of a mine is a mining partnership, except where there has been an express agreement to constitute a full trading partnership, but such latter agreement need not be proven by some express words of the parties, describing in exact language the relations intended to be assumed, or negativing in express words their intent to become mining partners.

4.  The chief fact which distinguishes mining from general partnerships is the absence of the delectus personae in the former and the resultant rules, that the shares of mining partners may be transferred to others, who become partners in turn by acquiring such interests, without working a dissolution of the partnership.

5.  Where there is an express agreement between the parties and it appears therefrom that they contracted with the object and purpose of relying upon the delectus personae in their relation, the fact that their business was the working of a mine does not affect their relation or liability as general partners.

6.  Where the findings and judgment are supported by the evidence, and it appears that the case was decided correctly upon the merits, the objection that the complaint does not state facts sufficient to constitute a cause of action, not urged in the court below, and which might have been obviated by an amendment of the complaint, is waived and cannot be urged upon appeal for the first time.

7.  Where upon demurrer being sustained to the complaint, the plaintiffs plead over, they thereby waive the error, if any, in sustaining the demurrer.

Appeal from the District Court of Bernalillo County.

Mr. Justice Parker, having passed upon one feature of the case in the court below, presented here by cross appeal,

Zack Metal Co. v. Topedo Copper Co., 17 N. M. 137.

did not participate, and the cause was heard before Roberts, C. J., Hanna, J., and Raynolds, District Judge.

WADE & WADE, for Appellant Nathaniel C. Foster.

Findings not sufficient to support the judgment. George on Partnership, p. 92.

Mining partnerships are non-trading partnerships. 22 Am. & Eng. Enc. L. (2nd ed.) 62; Jones v. Clark, 42 Cal. 180; Skillman v. Lachman, 23 Cal. 199; Charles v. Eshleman, 5 Colo. 107; Higgins v. Armstrong, 9 Colo. 38; Manville v. Parks, 7 Colo. 128; Judge v. Brashwell, 13 Bush. (Ky.) 67; Shaw v. McGregory, 105 Mass. 96; Poole v. Whitmore, 10 Heisk. (Tenn.) 629; 27 Am. Rep. 733; Dickson v. Valpy, 10 B. & C. 128; Brown v. Kidger, 3 H.. & N. 853; Kahn v. Central Smelting Co. 102 U. S. 641; Duryea v. Burt, 28 Cal. 569; Settembre v. Putnam, 30 Cal. 490; Taylor v. Castle, 42 Cal. 367; 2nd Lindley on Mines, pp. 1432 and 1436; Snyder on Mines, vol. 2, p. 1100, 1125, 1142; Manville v. Parks, 2 Pac. 212; Snyder v. Burnham, 77 Mo. 52; Anaconda C. M. Co. v. Butte & M. B. Co., 43 Pac. 924; Perkins v. Peterson, 29 Pac. 1135; Lyman v. Schwartz, 57 Pac. 735; Meager v. Reed, 9 L. R. A. 455.

One mining partner has no implied authority to borrow money or secure advances in the nature of loans for the purpose of carrying on the partnership operations. Skillman v. Lachman, 83 Am. Dec. 96; Duryea v. Burt, 28 Cal. 569; Decker v. Howell, 28 Cal. 636; Bentley v. Brossard, 94 Pac. 736; Hartley v. Gosling, 68 Pac. 118; Meager v. Reed, 9 L. R. A. 455; Manville v. Parks, 2 Pac. 212; Abbott v. Smith, 32 Pac. 843; Lyman v. Schwartz, 57 Pac. 735; Randall v. Meredith, 76 Tex. 669; Bates on Partnership, sec. 329-271; Lindle v. Partn., 266-270; Collyar, Partn. 658-686; Pars. Part. 108-218; Story, Partn. Sec. 126; Childers v. Neely, 34 S. E. Rep. 828; Charles v. Eshleman, 5 Colo. 107; Cyc. vol. 27, p. 755; Ashenfelter v. Williams, 7 Colo. App. 332; Perkins v. Peterson, 2 Colo. App. 424; Haskins v. Curran, 4 Ida. 573; Southmayd v. Southmayd, 4 Mont. 100; By bee v. Hawkett, 12 Fed. 649; 34 Cent.

Dig. tit. "Mines and Minerals," sec. 222; Bentley v. Brossard, 94 Pac. 736.

Notice of limited liability. Bank of De Soto v. Hansbrough, 89 Mo. App. 256; George on Partnership, p. 231; Rice v. Jackson, 171 Pa. St. 89; Winship v. Bank, 5 Pet. 529; Natl. Bank v. Cringan, 91 Va. 347.

Complaint fails to state cause of action. 3 Enc. P. & P. 544; 31 Cyc. 770; Alsop v. Central Trust Co., 100 Ky. 375; 8 Enc. P. & P. 10.

The judgment was excessive. 1 Cyc. 370.

MARRON & WOOD, for Appellees.

Findings of trial court based on substantial evidence will not be reviewed. Ortiz v. Bank, 78 Pac. 529; Candelaria v. Miera, 84 Pac. 1020; Hancock v. Beasley, 91 Pac. 735; Territory v. Sais, 103 Pac. 982; Putney v. Schmidt, not reported.

The facts found compel the conclusion of the court that the defendant Foster is liable to plaintiff under the contract for a return of the money advanced. 3 Cyc. 275, note 13; 3 Cyc. 310, note 41; Kuschel v. Hunter, 50 Pac. 397; Jarrel v. Sproles, 49 S. W. 904; Gardner v. Schwab, 110 N. Y. 650; Lamy v. Remunsen, 2 N. M. 245.

The relations of the defendants as mining partners was not raised by the answer. Clark v. Dillon, 97 N. Y. 371; Snyder v. Free, 21 S. W. 847; Stewart v. Street, 10 Cal. 372.

Defendants were general partners and liable as such. Skillman v. Lachman, 23 Cal. 204; Higgins v. Armstrong, 10 Pac. 232; Franklin v. Islobe Ins. Co. 52 Mo. 461; Duryea v. Burt, 28 Cal. 569; Kimberly v. Arms, 129 U. S. 512; Topliff v. Topliff, 122 U. S. 121; Page on Contracts, sec. 1126; Weckselberg v. Bank, 64 Fed. 90; Hurt v. Salisbury, 55 Mo. 310; Carpet Co. v. Crawford, 127 Mo. 356; Ryland v. Hollinger, 117 Fed. 216; Cook on Stock and Stockholders, sec. 233; Beach on Priv. Corp. sec. 162; Spelling, Priv. Corp. sec. 838.

Business associates who have not attempted to become incorporated are partners if they are the common proprie-

tors of a business carried on by them for profit, for the law knows no intermediate form of business organization between a corporation and a partnership. 30 Cyc. 397-8; Mehan v. Valentine, 145 U. S. 611; Bank v. Gallaudet, 122 N. Y. 655; McGovern v. Robertson, 116 N. Y. 61.

Persons having a proprietory interest in a business and its profits are liable as partners to creditors. Berthold v. Goldsmith, 24 How. 536; Rosenfeld v. Haight, 53 Wis. 260; Beauregard v. Case, 91 U. S. 134; Mantonya v. Rulby, 184 Ill. 183; Denten v. Wells, 65 N. J. L. 213; McGuinness v. School Dist., 39 Minn. 499.

The law will presume honesty on the part of a partner and an agent, and that presumption will be sufficient to charge them with notice of what he was doing or at least in the absence of evidence to the contrary. Turner v. Honenhoven, 100 N. Y. 115; Lincoln v. French, 105 U. S. 614; Gaithen v. Myrich, 63 Am. Dec. 316.

A firm is presumed to know the acts of the partners. Kramm v. Dimore, 152 Pa. St. 264; German American Bank v. Magill, 102 Wis. 582.

Complaint sufficient to support the judgment. W. U. Tel. Co. v. Longwell, 5 N. M. 308; Chaves v. Meyers, 11 N. M. 333; Penrose v. Winter, 67 Pa. 772; Dillon v. Cross, 91 Pac. 439.

## STATEMENT OF FACTS.

Prior to August 3, 1906, the Torpedo Mining Co., owning the copper property known as the Torpedo Mine at Organ, New Mexico, had gone into the hands of Nicholas Galles, as receiver, appointed by the court, and the defendant Geo. E. Fitzgerald, being a practical mine operator had some negotiations looking to a purchase of the mine, but being himself without sufficient means was seeking to associate with himself persons who could supply the necessary money. Through the defendant Frank A. Helmer, a lawyer in Chicago, he became acquainted with the defendant Foster and succeeded in interesting him in the enterprise, and on the 3rd day of August, 1906, Fitzgerald, Foster and Helmer entered into the following written agreement:

"THIS MEMORANDUM OF AGREEMENT MADE AND ENTERED into this third day of August, 1906, by and between N. C. Foster, of Fairchild, Wisconsin, and George E. Fitzgerald of El Paso, Texas, and Frank A. Helmer of Chicago, Illinois, WITNESSETH:

"That whereas said George E. Fitzgerald, second party, has made a proposition to Nicholas Galles as Receiver of the Torpedo Mining Co. at Las Cruces, New Mexico, for the purchase from him as such Receiver of the Torpedo Mining property so called, more specifically described in said proposition, at and for a price of three hundred thousand dollars ($300,000) upon terms in said proposition specified covering a period of two years for the payment thereof in partial payments, and it is understood by the parties hereto that the court at Las Cruces has authorized the receiver to accept said proposition upon said Fitzgerald filing a good and sufficient bond in the penal sum of twenty-five thousand dollars ($25,000) conditioned upon the payment of twenty-five thousand dollars ($25,000) first payment on said purchase price within six months, and further conditioned that said mining property shall be kept free from liens and incumbrances occasioned by said Fitzgerald during his operation under said contract with said receiver, and whereas the said Foster, first party, is about to furnish, or procure said bond, and advance to the enterprise a sufficient amount of money, not exceeding the sum of fifteen thousand dollars ($15,000) as shall be required in the procuring possession, opening and operating of said mine under the terms of said contract with said receiver, for which services and money to be required said Foster is to receive a compensation in the way of a conveyance hereafter of a proportionate share of said mining property.

"NOW THEREFORE, it is agreed between the parties hereto as follows: That said Foster will provide or furnish the security, or indemnity required for the procuring of the bond in question in the penal sum of twenty-five thousand dollars ($25,000) conditioned as aforesaid from a surety company, pursuant to the order of said court, and that he will advance such sums as shall be required for pro-

curing possession and prosecution of operations under said contract upon said mining property not to exceed the sum of fifteen thousand dollars ($15,000), as the same may be required by the needs of said operations and called for from time to time, any and all such sums to be construed as an advance to the enterprise and to be returned and repaid to the said Foster from the net profits, or proceeds of said enterprise, and mining operations hereafter, and within a period of six months herefrom.

"IT IS FURTHER AGREED that said Fitzgerald shall give his whole time and personal energies and attention to the management, control and development of said mining property and enterprise, have entire charge of and responsibility therefor, he being allowed to draw the sum of two hundred and fifty dollars ($250) per month to be charged as expenses against said enterprise, until such time as the twenty-five thousand dollars ($25,000), first payment, under said contract called for has been made, and without further compensation as salary.

"IT IS FURTHER AGREED that in furtherance of the enterprise a corporation shall be organized under the laws of some of the states or territory to be agreed upon by said three parties hereto with such amount of capital stock as may be mutually agreed upon, and that the proportion of stock of said corporation or interest in the enterprise shall be divided as follows: 25 per cent thereof to N. C. Foster, 8 1-3 per cent thereof to Frank A. Helmer, and the remainder, 66 2-3 per cent to said George E. Fitzgerald.

"IT IS FURTHER AGREED that all advances, as heretofore specified, made by said Foster to said enterprise in the way of money advanced for the obtaining possession, prosecution of operations thereunder, and the conduct of the business connected with said enterprise shall be treated as an advance and repaid as hereinbefore specified, but that said Fitzgerald shall not be personally liable for the return or payment of any of said money individually, and that said Helmer shall be responsible to the said Foster for the return only of one-fourth thereof.

"IT IS FURTHER AGREED that any and all amounts, if any, paid, by said Foster under his obligations upon said

bond, shall be chargeable to the enterprise, and repaid to him from the mining properties in question, or their proceeds as in case of any debt of the enterprise paid by him.

"IT IS UNDERSTOOD AND AGREED that upon the organization of such corporation, said N. C. Foster shall be elected president, Frank A. Helmer, secretary and treasurer, the said George E. Fitzgerald shall be made the general manager, and that all three shall be directors.

(Signed)
"N. C. FOSTER,
"GEORGE E. FITZGERALD,
"FRANK A. HELMER."

After the execution of the above contract, Fitzgerald made a written proposition to the receiver, on behalf of himself and his associates to purchase the mine. The receiver was duly authorized by the court to enter into the proposed contract with Fitzgerald and his associates, which he did on the 13th day of August, 1906. Under the contract the purchasers bound themselves to take possession of the said premises and property, and proceed to free the same from water, and thereafter prosecute the operation of said property in a miner like manner; conduct, operate and develop said mine and mining property diligently and in a manner consistent and in accordance with the usual miner like methods of mining, and drain and keep drained and care for said mine and property in a good and workmanlike manner, and specifying certain other things to be done in connection with said mine which need not be set out. The proposed purchasers agreed to expend $25,000 during the first year in developing said mine, and executed a bond in the sum of $25,000 for the payment of all debts and obligations, etc. The bond was furnished by the defendant Foster.

After the execution of the contract between the three defendants in Chicago, L. G. Tucker was hired as auditor to go to the mines and look after the accounting, and being acquainted with Fitzgerald, and doubtful of his responsibility, saw Helmer, whom he knew, and was assured by Helmer that the enterprise was backed by all three, and that it was safe for him to go. Helmer then went with Fitzgerald

Zack Metal Co. v. Topedo Copper Co., 17 N. M. 137.

from Chicago to Las Cruces to complete the deal and to superintend the details of its execution. After the execution of the contract for the purchase of the mine, Helmer and Fitzgerald went out to Organ to the mine, and spent two or three days looking over the proposition, after which Helmer returned to Chicago and Fitzgerald took possession of the mine. From that time Helmer was in constant communication by letters and telegrams with Fitzgerald, Tucker and Foster, and received reports frequently from Fitzgerald and Tucker as to what was being done at the mine, and communicated to Foster uniformly everything of importance or of interest. Mr. Foster was in Chicago frequently, and visited Helmer at his office, and there received from Helmer all the information concerning the mine and the workings thereof known to Helmer. While Helmer was in Las Cruces on the first visit, arrangements were made for the incorporation of the company, but for various reasons, the matter of incorporating the company was delayed until the latter part of October, 1907, a portion of the delay being due to the fact that negotiations were pending with various parties for a sale of the property by the defendants. It appears that the defendants decided not to await the incorporation of the company before proceeding with the working of the mine, and while no agreement in express terms between the defendants to operate as a partnership until the corporation should be organized and completed, was testified to, yet that such an agreement existed and was so understood by the parties themselves, is abundantly established by the evidence. Foster continued to advance money for the operation of the mine far beyond the $15,000 specified in the original contract, and down to the time of the organization of the corporation, had advanced about $75,000. The defendant, Foster, evidently understood that the three defendants were partners, and that he was liable as such for the debts and obligations of the company. In a letter to the defendant, Fitzgerald, on January 4th, 1907, he says: "What has become of the incorporation papers for the Torpedo Copper Company? It seems to me these papers ought to be executed and things put in shape, as I believe it is somewhat dangerous to run

that business the way it is run at the present time unincorporated." And in another letter to Fitzgerald on March 11th, 1907, he says: "I am quite anxious to have the incorporation of the Copper Company completed and the transfer of the mine to the company, on account of danger of accidents, etc., which might occur and embarrass us more in a partnership business than as an incorporation." And in another letter on July 20th, 1907, he says: "I have been urging Mr. Helmer for some little time to have the incorporation put through, as I do not like the responsibility of the thing as it now stands and if we get that perfected in good shape, I shall not be quite so anxious to sell the property but you know how it is and the liability might be too great under the present conditions." Other evidence was introduced showing that the three defendants also had in contemplation the matter of a town-site adjoining the mine, the erection of a smelter, the contract for which was apparently let by the defendant Foster himself, and the construction of a railroad from the mine to connect with some other railroad. The business of operating the mine was carried on by Fitzgerald under the name of the "Torpedo Copper Company." Tucker, the auditor and bookkeeper opened up a set of books for the company, and at the head of the books, he stated the relationship between the parties as follows: "Partnership existing between N. C. Foster of Fairchild, Wisconsin, F. A. Helmer of Chicago, Ill., and George E. Fitzgerald of Organ, N. M., being the individuals composing the partnership and in interest as follows." Both Foster and Helmer were at the mine a number of times after the books were opened and both examined the books, but there was no direct testimony showing that either of them saw the statement entered by Tucker.

Numerous letters from Helmer to Fitzgerald were introduced in evidence for the purpose of showing the relations of the parties defendant to each other. In a letter of October 29th, 1906, from Helmer to Fitzgerald, he says: "You are not connected with people who are covertly looking for a chance to get your scalp. We shall not need Langworthy. We three are enough and we will be practically one." Again he says in a letter of November 13th, 1906,

in speaking of a proposition of Fitzgerald, apparently to sell or take in some other parties in the venture: "I have rather come to count on the Torpedo an enterprise in which I intuitively associate only yourself, Mr. Foster and myself to all substantial purposes—we have a good thing on a conservative ownership basis and there is enough in it on this same conservative basis to make it a perfectly safe and thoroughly profitable enterprise for us all." And in a letter of the 24th of November of the same year, Helmer says to Fitzgerald: "Mr. Foster was in today. He says you needn't worry a minute about falling down." In a letter of November 28th, 1906, Helmer says to Fitzgerald: "Neither Mr. Foster nor I would want to stay in the mine if you went out. I have depended on you and Mr. Foster is depending on you through me. Neither of us are foolish enough to want anything to do with a mine except in the hands of a friendly, honest and capable associate. When you go out, we go out too undoubtedly, for we are simply in here through you." Unfortunately the letters from Fitzgerald to Helmer and Foster were not produced upon the trial of the case.

In October, 1907, when the incorporation of the company was completed, all three of the defendants signed a written statement transferring the property to the corporation in exchange for its stock, a portion of which statement read as follows: "All the accounts, and bills receivable and assets connected with or belonging to the mining enterprise now and heretofore conducted by us upon said premises and under said contract, you to take the same subject to and you to assume and agree to pay all our outstanding liabilities and obligations connected with or arising from the business now and heretofore conducted by us under the name of the Torpedo Copper Co. under said contract."

Fitzgerald had, from the time he began operations, delivered all the ore mined to the El Paso Smelter, from whom he had been accustomed to receive advances. In June, 1907, Fitzgerald began negotiations with the Torreon smelter through the plaintiff, Daily, for the smelting of the ores of the company. His desire to change was prompted by the fact that the El Paso smelter would not ad-

vance to him a sufficient amount on the ore to be delivered in the future, and he desired to make arrangements whereby more liberal advances could be secured. After several interviews and much correspondence, an arrangement was finally perfected between Fitzgerald and the plaintiffs by which the Torreon smelter was to reduce the ore, and plaintiffs were to advance to Fitzgerald, or the Torpedo Copper Co. the value of the ore on board the cars at Las Cruces, N. M., less freight and treatment charges, and under this agreement, the plaintiffs advanced to the defendant, Fitzgerald, the amount for the recovery of which this action was instituted.

It is evident that the substance of the communications between the plaintiffs and the defendant, Fitzgerald, and probably the contract itself, was sent by Fitzgerald to Foster, as Foster, in his letter of August 26th, to Fitzgerald, says: "You speak of getting all settled up with the El Paso smelter people, I hope you will see that everything and all contracts are settled up to their satisfaction before leaving them, as I imagine we do not want any trouble with them in any way, shape or manner. Therefore there should be a perfect understanding with them before making the change. Neither do I think we should enter into any very extensive contracts with the Torreon people. Better see how things pan out first. I am under the impression that if any contracts are made, it should be done by the Torpedo Copper Co. as a corporation. If your ore pans out as you expect, tonnage and value, I can see no reason at the present time for getting advances from them as likely by the time you need more money you will have it coming. Possibly you might need some advances on shipments of ore until you get fixed with them." On October 3rd, 1907, Helmer wrote Fitzgerald with reference to Fitzgerald's failure to come to Chicago as had been arranged: "On finding that you had not left. I showed him (Foster) that you could not leave under the circumstances if Daily was coming with the pay roll approaching. I think Foster will endorse the Torreon smelter contract proposition, as he now seems to thoroughly approve it." From the evidence it appears beyond question that the defendant, Foster, knew

that the El Paso smelter had been making advances to Fitzgerald on ore shipped, and that at the time of the change from the El Paso smelter to the Torreon smelter, Foster himself paid to the El Paso smelter $4,000 in settlement of all advances made by that smelter not covered by ore shipments.

The plaintiffs advanced to the defendant, Fitzgerald, under the contract of August 31st, 1907, $16,500 in money on ore prior to the incorporation of the company. This ore was not tested or sampled at Las Cruces, N. M., as provided by the contract, this provision having been waived by both parties. The price of copper had materially depreciated between the period of the shipment of the ore and the time for settlement under the contract, and the quality of the ore shipped was found when assayed, to be such that its total net value was less than the freight, treatment and extraction charges provided for in the contract by some $1,483, and including the excess freight paid on moistures, the total loss was $2,146.95. This action was instituted to recover from the three defendants the advances made and the loss sustained on freight and treatment charges and moistures, the plaintiffs alleging that the defendants were co-partners and that each was liable individually for the amount claimed. The defendants were all non-residents of the Territory of New Mexico, and service was had only upon the defendant, Foster, who appeared and filed an answer, setting up the contract executed between the three defendants and denying the liability. The cause was by stipulation transferred to the District Court of Bernalillo County and was heard by the court, a jury having been waived. The court made findings of fact in substance as follows:

"1. The co-partnership of the plaintiffs.

"3. That Fitzgerald entered into the agreement with the receiver on behalf of himself and his associates, Foster and Helmer, and took possession of the mine in the joint behalf until it was turned over to the corporation on October 16th.

"4. That during all this time the three defendants were

partners doing business under the firm name and style of the Torpedo Copper Co.

"5. That as such they were engaged in the operation of the mines 'and in plans, preparations, work and expenditures for the erection of a smelting and reducing plant for the purpose of extracting and smelting ores and the acquiring and exploiting of a townsite which they propose to use in connection with the development and operation of said mines.'

"6. That the said George E. Fitzgerald, on the evidence, had authority from the defendants Nathaniel C. Foster and Frank A. Helmer to market all ores extracted from the said mines, and to procure advances from the plaintiffs on account of ores thereafter to be extracted and mined in the conduct of the co-partnership business, and the defendant Foster knew that such advances were being made by the plaintiffs, and made no objection to them.

"7 to 9. That while so acting, that the co-partnership entered into the written contract for the sale of the ores to the plaintiff and providing that the plaintiffs would advance sums of money from time to time on account of the ores thereafter to be mined which was to be repaid with such ore with interest at one per cent a month.

"10. The tenth finding sets forth in detail the charges or deductions to be made for treatment, freight, etc.

"11. That a considerable quantity of·ore was shipped by the defendant company to the plaintiff prior to the organization of the corporation but the quality and price was such that (18th) the freight, treatment and extraction charges 'provided for in the aforesaid contract' exceeded the net value by $1,483.82.

"14. That the plaintiff advanced $15,500.00 prior to October 16th on account of ore thereafter to be shipped and paid $1,000.00 to May Bros. for hauling the ore which was likewise to be considered as an advance.

"19. That the defendants, on or prior to the month of December, 1907, ceased to operate the aforesaid mine or to extract ores therefrom, and disposed of the mine to other parties, and have failed and refused to re-pay to the plaintiffs the aforesaid sums or any part thereof."

Upon these findings the court stated the following con-clusions of law:

"1.   That the said George E. Fitzgerald was without authority given in express terms to pledge the personal credit of his associates in the said enterprise or to borrow money or contract debts in the operation of the same min-ing claims, and personally bind them or either of them, but had implied authority as set forth in findings of fact two (II) and six (VI) as hereabove set forth.

"2.   That the sums of money advanced by the plaintiffs or for the said Torpedo Copper Company, in the operation of the said mine were to be paid back in ores to be thereaft-er shipped by said copper company.

"3.   That the plaintiffs are not entitled to recover any-thing on account of freight, treatment or reduction charges paid on the ores shipped by or through them to the Tor-reon smelter.

"4.   That plaintiffs are entitled to recover from the de-fendant Nathaniel C. Foster, the several sums advanced by the plaintiffs to the Torpedo Copper Company, and the sum paid May Brothers, with interest from the date of each advance or payment at the rate of twelve per cent (12%) per annum, amounting at this date to the sum of twenty-three thousand six hundred forty-one and 31-100 dollars ($23,641.31), to all of which findings and conclu-sions the defendants excepted."

Judgment was entered in accordance with the findings, from which judgment the appellant prosecutes this ap-peal, and the appellees also prosecute a cross appeal from the action of the court in holding that the plaintiffs were not entitled to recover on account of freight, treatment or reduction charges paid on ore shipped by or through them to the Torreon smelter.

### OPINION OF THE COURT.

ROBERTS, C. J.—The appellant contends that the find-ings of the trial court are not sufficient to support the judg-ment.   The findings are set out in the statement of facts and it is not necessary to repeat them here.   The appellant evidently proceeds upon the theory that if any doubt exists

as to the meaning of the findings that doubt is to be resolved in his favor. He endeavors to create such doubt by combining and confusing the language of the sixth finding of fact that Fitzgerald had authority to make the contract with the first conclusion of law that this authority was not given in express terms. The rule as to the construction of findings is exactly the opposite from that contended for by appellant. The general rule is "that every reasonable intendment and presumption will be resolved against the appellant and in favor of the correctness of the proceedings below." 3 Cyc. 275. Applying this rule to the construction of findings, every inference not contrary to the evidence or otherwise appearing to be unreasonable will be drawn from the facts found and in case of doubt that presumption will be presumed correct which supports the judgment. 3 Cyc. 310. In Kuschel v. Hunter (Cal.) 50 Pac. 397, the court says: "The presumptions we are permitted to indulge must be in support of the judgment. If there are doubts as to the meaning of any finding they must be resolved in support of the judgment." Tested by this rule we think the findings are sufficient to support the judgment.

Appellant argues that the findings are not supported by the evidence. This court has held, by an unbroken line of decisions, that it will not disturb findings of fact, where there is any substantial dispute upon the evidence. A great many of the disputed facts in the case were established by circumstantial evidence and we cannot say that the lower court was not justified in arriving at the conclusion it did.

The principal contention urged by appellant is, that the defendants were mining partners, and therefore that Fitzgerald did not have the power to bind Foster by his engagements with the plaintiffs. That a mining partnership has special features, differing from other partnerships, among which are a want of the delectus personarum and a consequent want of that authority in the individual members to pledge the personal credit of their associates except for the employment of labor and similar essential purposes. There is, of course no dispute as to the existence

of these special associates, known as mining partners, and as to the lack of power of any member thereof to bind his associates to the extent of the implied powers of a commercial partner. But under the findings of the court it is apparent that the principle does not apply to the case at bar.

Under the 6th finding the court found that Fitzgerald, on the evidence, had authority from the defendants Foster and Helmer to market all ores extracted from the mine and to procure advances from the plaintiffs on account of ores thereafter mined, and that the defendant Foster knew that such advances were being made, and by its fourth finding the court found that the parties were "partners doing business under the firm name and style of the Torpedo Copper Company, and as such partners were engaged in the development and operation of the mining property." It is evident that the court found that the parties did not sustain the relation to each other of mining partners, but that they were partners, subject to the rules relating to an ordinary partnership in trade. This conclusion is strengthened by the fact that the appellant, at the conclusion of the testimony, requested the court to find facts showing the existence of a mining partnership, and to state the conclusion of law therefrom that the relationship existing between the said parties, constituted a mining partnership. This the court refused to do, but made the findings set out in the statement of facts.

The appellant contends that the agreement of August 3, 1906, set out in the statement of facts was the measure of the power of the partners, and limited their rights, and that the liability of the defendant Foster must be determined under the provisions of said contract. If this proposition is correct there could be no doubt as to the non-liability of the defendant Foster. The lower court however evidently did not determine his liability upon such contract. A reading of the contract will evidence the fact that it did not provide for the working of the mine. It was simply a preliminary arrangement between the three parties, providing for the purchase by Fitzgerald of the property, the furnishing of the indemnity bond by Foster, the organiza-

tion of a corporation and the distribution of the shares of stock. It was evidently never the intention of the parties to carry on, under this written agreement, the extensive mining operations which they did. Immediately after the purchase by Fitzgerald of the property, or the signing of the contract for the purchase, steps were taken to complete the formation and organization of a corporation to take over the property. This was delayed from time to time, and Fitzgerald continued working the mine and Foster to advance money far beyond the amount specified in the preliminary written agreement. Other undertakings were begun by the parties, and from all the circumstances shown on the trial we believe the court was justified in concluding that a partnership existed between the parties and that it was subject to the rules relating to an ordinary partnership in trade. We have set forth in the statement of facts many of these facts and circumstances. The appellant contends that every agreement for the working of a mine is a mining partnership, except where there has been an *express agreement* to constitute a full trading partnership, but we do not understand that appellant contends that by "express agreement" he means one proven by some *express words* of the parties describing in exact language the relation intended to be assumed or negativing in express words their intent to become mining partners. In the leading case in this country on mining partnerships, Skillman v. Lachman, 23 Cal. 204, the court says: "Still there may be a partnership in the working of a mine subject to the rules relating to an ordinary partnership in trade. Story Part. sec. 82. And this relation of partnership may be constituted either by express stipulation or by implication deduced from the acts of the parties." The court evidently found that the relation of the defendant Foster to the enterprise was not that of a mining partner.

The chief fact which distinguishes mining from general partnerships is the absence of the delectus personae in the former and the resultant rules, that the shares of mining partners may be transferred to others, who become partners in turn by acquiring such interests; and as the partners therefore have not the right to choose

their associates, it necessarily follows that such associates have no power to personally bind their fellow members. Skillman v. Lachman, 23 Cal. 198; Duryea v. Burt, 28 Cal. 569; Meagher v. Reed (Col.) 24 Pac. 681.

Where there is an express agreement between the parties, and it appears therefrom that they contracted with the object and purpose of relying on the delectus personae in their relations, the fact that their business was the working of a mine does not affect their relation or liability as general partners. This proposition was decided by the Supreme Court of California in the case of Decker v. Howell, 42 Cal. 637. The court says:

"The main question in this case is whether Howell had authority, either express or implied, to make the note in suit. It is equally well settled by the decisions of this court that no such authority exists in the case of an ordinary mining partnership. The decisions in Skillman v. Lachman, 23 Cal. 206, and the subsequent cases, place this exception to the recognized rule as applicable to trading partnerships, upon the ground that in mining partnerships the delectus personae does not exist, and the membership is continuously subject to changes beyond the control of the partners. But it is no disparagement to the salutary doctrine of these cases to hold that a strict partnership may exist in the working of a mine which shall be subject to the incidents of a trading partnership. There is nothing in the nature of the business of mining which forbids such a contract. If by the terms of a contract of mining partnership it appears that the confidential relations of an ordinary partnership are established, and that the firm is not subject to the intrusion of other partners at will, the reason of the rule that restricts the powers of a single partner fails. The parties are strictly partners, not by reason of their common ownership of the mine, but as the result of their own agreement. * * * In Bainbridge on mines, 439, the author says: 'But there are mining concerns which are carried on by partners, few in number, subject to mutual selection, and therefore more close-ly connected by mutual confidence.' * * * There may be no difference between firms of this kind and those en-

gaged in any other distinct business as general partners, and those who are not working partners may not be the less liable to the general consequences of such a partnership."

Certainly it must be the intention of the parties, operating a mine, which must control. If they intend that their relations to each other shall be that of partners, with the confidential relations of an ordinary partnership existing, and the firm not subject to the intrusion of other members at will, no reason exists for the application of such business relations of the rules of an ordinary mining partnership.

The facts and circumstances established and proven on the trial of this case in the lower court justified the court, in concluding that the parties themselves intended to establish the confidential relations of an ordinary partnership. Foster, the appellant, in several of his letters, speaks of his liability for the obligations of the partnership. If a mining partnership existed, and if the partners regarded each other merely as mining partners, no liability on his part would have existed, save as he had authorized. Fitzgerald, the managing partner at the mine, contracted debts and incurred obligations, procured advances from the El Paso Smelter, all of which were taken care of by Foster, and that without objection or complaint. The correspondence shows that the parties did not intend that other partners should intrude into the partnership. Helmer says to Fitzgerald, in speaking of a proposition which had been made to Fitzgerald to buy his interest, "If you go out we go out"; again he tells Fitzgerald, "we three are one." If either of the three partners had conveyed his interest in the mine to a stranger, the purchaser and the remaining partners would have become tenants in common of the mine and in its workings subject to the rules applicable to an ordinary mining partnership; Decker v. Howell supra., but such sale would have worked a dissolution of the general partnership theretofore existing between the three partners. The court found that the partners had in contemplation other enterprises, viz: the erection of a smelter, the exploiting of a town site and

the building of a railroad. These enterprises were not mentioned in the written contract of Aug. 3rd, but were taken up by the parties later.

Where in a partnership, the delectus personae exists, and the parties intend that the confidential relations of partners shall exist, and so treat the business relation, the mere fact that the business engaged in is the operation of a mine, should not alter the liability of the individual partners. To so hold would be to lose sight of the principle which distinguishes a mining partnership from an ordinary commercial partnership. The mere fact that parties make a contract, associating themselves together for the purpose of mining, falls far short of fixing their relations as mining partners.

Kimberly v. Arms, 129 U. S. 512.

The real relations of the partners must be determined, not on the agreement of Aug. 3, as appellant assumes, but on their acts, intentions and agreements thereafter, as disclosed by the evidence; the contract being merely a piece of evidence serving to throw light on these intentions.

The lower court found that an ordinary commercial partnership existed between the parties; while such finding was not made in express terms, yet it was plainly made by implication, and finding no error in this holding, upon the evidence, numerous points argued by appellant are disposed of.

Appellant contends that Daily had notice of the limited liability of Foster, basing such contention upon a remark made by Galles, the receiver, to Daily that "Foster had associated with him as mining partners, Foster and Helmer," but there were other facts and circumstances appearing in evidence, of which Daily had notice, which justified the court in holding otherwise.

Appellant, in this court, for the first time challenges the sufficiency of the complaint to state a cause of action. No demurrer to the complaint was filed in the lower court, and no objection was interposed to the admission of evidence. This contention can be disposed of by a quotation from the case of Cushing v. Pires, 124 Cal. 663:

"While the complaint is not to be recommended as a precedent to be hereafter followed, yet in view of the fact that no objection, either as to its form or substance was made in the court below, we think it sufficient to support the judgment based upon it. It is true that the objection that the complaint does not state a cause of action may be successfully made for the first time on appeal, but the appellate court will not be over zealous to find a defect in the complaint that the appellant himself failed to discover until the case had been decided against him on its merits. We think the defects in the complaint, as well as the variance complained of, are of a nature to be waived by failure to call them to the attention of the trial court by proper objections, and that the defendant should not be heard to urge those objections for the first time after judgment."

See also Western Union Telegraph Co. v. Longwell, 5 N. M. 308; Chaves v. Meyers, 11 N. M. 333.

Appellant claims that the judgment was excessive, in that the court included in the judgment the sum of $3000 and interest thereon. In a statement rendered by Daily to Foster on May 6, 1908, this $3000 was shown to have been advanced on Oct. 23, 1907, which it develops was after the date of the organization of the corporation. But Daily, in his testimony, says that the sum was advanced on the date of the organization of the corporation, so we cannot say that the court was in error in including the item.

The plaintiffs have brought a cross appeal assigning as error the action of the court in finding that the plaintiffs waived their right to recover freight and treatment charges, claiming that such finding is without any evidence to support it. We have examined the transcript and find that there is evidence upon which the court might have based such a finding.

Appellees, in their cross appeal, also assign as error the action of the court in sustaining the demurrer, to the amended complaint and thereby striking out the additional defendants. It is a sufficient answer to this alleged error to say that the plaintiffs did not stand on their

demurrer, but filed an amended complaint, and that the parties defendant who were stricken out, by the action of the court in sustaining the demurrer are not .parties to this appeal.

Finding no error in the record the cause is affirmed.