WILKINSON, Appellant, *v.* BELL et al., Respondents.
No. 8622
Submitted March 1, 1946. Decided March 22, 1946.
168 Pac. (2d) 601

Mr. Earle N. Genzberger and Mr. R. A. Wilkinson, both of Butte, for appellant.

Mr. H. A. Tyvand and Mr. Joseph P. Vilk, both of Butte, for respondent.

MR. JUSTICE CHEADLE delivered the opinion of the court.

Action by Adele Wilkinson against F. M. Bell and Sam J. Bukvich, a mining co-partnership, doing business under the firm name and style of Bell & Bukvich. The amended complaint consists of twenty-two causes of action for the recovery of various amounts represented by promissory notes, each payable to the order of plaintiff, and executed by "Bell & Bukvich, By F. M. Bell."

The causes of action are similar with the exception of the dates and amounts of the notes sued upon, and substantially allege that F. M. Bell and Sam J. Bukvich are, and at all times therein mentioned were, mining co-partners, doing business under the firm name and style of Bell & Bukvich, in the ownership and operation of certain patented and unpatented mining claims; that between May 20, 1943, and March 21, 1944, defendants operated such claims and borrowed from plaintiff certain moneys to conduct such operations. Paragraph two of each cause of action describes the note sued upon therein. Paragraphs three and four allege ownership of the notes in plaintiff, demand and refusal of payment, and the amounts due, with interest.

The answer to each cause of action admits that defendants F. M. Bell and Sam J. Bukvich were mining co-partners, doing business under the firm name and style of Bell & Bukvich, and operating the claims described in the complaint; alleges that said mining co-partnership existed from about May 1, 1942, to about April 17, 1944, when it was dissolved; denies that during such period either Sam J. Bukvich, individually, or as such mining co-partner, or that the mining co-partnership of Bell and Bukvich at any time borrowed any money from plaintiff; alleges that if the plaintiff loaned the money to any person it was loaned to F. M. Bell individually and upon his own and sole credit.

The cause was tried to the court, without a jury, judgment being awarded in favor of plaintiff and against the defendant F. M. Bell for the amount sued for, and dismissing the action as against the defendant Bukvich.

The material findings by the court are as follows: "1. That from on or about the 19th day of May, 1942, to on or about the 17th day of April, 1944, the defendants F. M. Bell and Sam J. Bukvich, were the members of a mining partnership doing business under the firm name and style of Bell and Bukvich and as such mining partners they acquired those certain patented mining claims, * * * for the purpose of working them and extracting minerals from them and that between said dates they did actually engage in working them and did extract minerals from them.

"2. That the defendant, F. M. Bell, signed each and all of the twenty-two negotiable instruments set forth and sued upon in the amended complaint herein as follows, to-wit, 'Bell & Bukvich by F. M. Bell,' and delivered them in the order of their dates to the plaintiff herein.

"3. That the defendant, Sam J. Bukvich, did not expressly or at all authorize the defendant, F. M. Bell, in writing or otherwise to sign the partnership name of 'Bell & Bukvich' to said instruments or to execute the same in behalf of said partnership."

Conclusions of law are to the effect that the plaintiff is en-

titled to recover from F. M. Bell, but not from Bukvich and that as to the latter the action should be dismissed.

Errors complained of which require consideration are: (1) The trial court's finding "That the defendant, Sam J. Bukvich, did not expressly or at all authorize the defendant, F. M. Bell, in writing or otherwise to sign the partnership name of 'Bell & Bukvich' to said instruments or to execute the same in behalf of said partnership," in that said finding is contrary to and is not supported by the evidence. (2) The ruling that authority from Bukvich to Bell to execute and deliver the notes must be in writing and that the word "express," as used in section 8058, Revised Codes, means "written." (3) The conclusion "that the plaintiff herein is not entitled to recover anything as against the defendant, Sam J. Bukvich, and that the action should be dismissed as to him." (4) Failure of the trial court to find that the partnership of Bell & Bukvich was liable on each and all of the notes sued upon.

Obviously the trial court's findings and judgment are based upon the assumption that the defendant partnership is a mining partnership, no member of which has authority to bind the partnership by a contract in writing, except by express authority of the other members.

Statutory provisions governing mining partnerships are found in Chapter 162, Revised Codes, the pertinent sections of which are quoted: Section 8050: "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same." Section 8051: "An express agreement to become partners or to share the profits and losses of mining is not necessary to the formation and existence of a mining partnership. The relation arises from the ownership of shares or interests in the mine and working the same for the purpose of extracting the minerals therefrom." Section 8055: "One of the partners in a mining partnership may convey his interest in the mine and business without dissolving the partnership. The purchaser, from the date of his

purchase, becomes a member of the partnership.'' Section 8053: ''No member of a mining partnership or other agent or manager thereof can, by a contract in writing, bind the partnership, except by express authority derived from the members thereof.''

It will thus be seen that the law governing mining partnerships differs, in several important respects, from that governing general partnerships. The important difference affecting this case is the statutory restriction upon the power of one member of a mining partnership to bind the partnership by a written contract, unless expressly authorized by the other members. As is said in 36 Am. Jur., sec. 161, p. 394: ''The duties and powers of members of mining partnerships are quite different from those of members of general partnerships. One of the distinctions, noted above, between a mining partnership and an ordinary partnership is the absence from the former of the delectus personae. From this it follows that in a mining partnership there is a more limited authority in the individual member to bind the others than there is in a general partnership. A member has no general authority, by virtue of such membership, to bind the association or the other members by his contracts, for, as has been pointed out by some courts, it would be unjust to subject each proprietor to personal liabilities which might sweep away all his property, created against his consent, by those who become members against his wishes.'' (See annotations in 18 L. R. A., N. S., 965; Ann. Cas. 1914D, 1191; 4 Ann. Cas. 268.)

In 36 Am. Jur., sec. 164, p. 395, it is said: ''The power and authority of a member of a mining partnership being limited, he may not, unless expressly authorized, borrow money for the firm, issue or negotiate commercial paper, or draw or accept bills of exchange on the credit of the firm. * * * A managing partner has power to do what is reasonably necessary to the carrying on of the firm's mining business. * * * But he has no authority to pledge the credit of the partnership for money borrowed for the purposes of the concern.'' (See annotations

in Ann. Cas. 1914D, 1191; McConnell v. Denver, 35 Cal. 365, 95 Am. Dec., 107.)

But obviously the members of a partnership engaged in mi██ ning can, by agreement, waive the statutory restrictions and clothe the partnership with the characteristics of a general partnership. In 36 Am. Jur. sec. 158, p. 392, this rule is stated: "A mining partnership having the usual characteristics of an ordinary partnership may be created by agreement of the parties, and it has been held that where there is an express agreement between the parties, and it appears therefrom that they contracted with the object and purpose of relying upon the delectus personae in their relation, the fact that their business was the working of a mine does not affect their relation or liability as general partners." Skillman v. Lachman, 23 Cal. 198, 83 Am. Dec. 96; Daily v. Fitzgerald, 17 N. M. 137, 125 Pac. 625; Ann. Cas. 1914D, 1183.

This court, in Meister v. Farrow, 109 Mont. 1, 92 Pac. (2d) 753, 757, said: "Testimony was introduced to show that appellants were not mining men and had no knowledge of the practical operation of a mine. This is not important in determining whether a mining partnership existed, since a mining partnership has as one of its distinguishing features an absence of the delectus personarum" Congdon v. Olds, 18 Mont. 487, 46 Pac. 261.

Black's Law Dictionary defines "delectus personae" as fol██ lows: "Lat. Choice of the person. By this term is understood the right of a partner to exercise his choice and preference as to the admission of any new members to the firm and as to the persons to be so admitted, if any." As we have seen, such right does not exist in a strictly mining partnership, by virtue of the provisions of section 8055, Revised Codes. The first question in this case, therefore, is whether or not the defendant firm is strictly a mining partnership. The pleadings, taken by themselves, establish that the firm sued was a mining partnership, and we would be required to so hold except for the written agreement entered into by the partners. This agreement, ap-

pearing in the record as Defendant's Exhibit 28, provides, in part, as follows: "The said parties have agreed between themselves, and do hereby agree, that they will hold said Lease and Option and said unpatented mining claims, and will prosecute the development and operation of said properties, jointly; that any and all profits accruing from the development and operation of said properties, over and above all costs and expenses connected therewith, and over and above all royalty payments and payments on purchase price, shall be divided equally between the parties hereto; and in the event of the sale by said parties of the said Lease and Option and of the said properties, then all profits accruing from said sale shall likewise be divided equally between the parties hereto.

"It is further agreed that in the event one party to this agreement shall desire to sell his interest in the said Lease and Option and the said property, the other party shall have the privilege of purchasing the said interest at a price to be agreed upon between the parties; in the event the parties hereto cannot agree upon the price for said interest, the question of price shall be referred to three (3) disinterested persons as arbitrators, one of said arbitrators to be chosen by each of the parties hereto, and those two to choose the third; and the parties hereto will abide by the decision of such arbitrators, or a majority thereof, as to the price to be paid for said interest.

"And it is further agreed between the parties hereto, that in the event of the death of one of the parties, the surviving party shall have the right and privilege, at his option, to purchase the interest of the deceased party for the sum of Five Thousand ($5000.00) Dollars, the said sum of Five Thousand ($5000.00) Dollars to be payable within a period of not more than five (5) years after the death of such deceased party, and to be payable out of the net profits derived from such operations by the payment of at least forty (40%) per cent of such net profits; * * *."

An analysis of this contract leads to the conclusion that it effectively disposed of one of the essential characteristics

of a mining partnership, that is, the absence of delectus personae. The apparent intention of the parties was to retain the delectus personae—that is, the control over the admission of new partners, and the choice of such new partners, if any. One of the rights of a member of a mining partnership is the sale of his interest without the consent of or reference to the other members. By statute (section 8055), the sale of his interest does not dissolve the partnership, and the purchaser thereof becomes a member of the partnership. By so restricting the sale of the interest of either, the parties must have contemplated and intended that the firm be regarded as a general, and not a mining partnership, in the strict and statutory sense. Such was the effect of the contract. (See above quoted portion of 36 Am. Jur., sec. 158.) Lindley on Mines, 3d Ed., sec. 799, p. 1966, states the rule: "The mere fact that parties make a contract associating themselves together for the purpose of mining falls far short of fixing their relation as mining partners. If by the terms of a contract of mining partnership it appears that the confidential relation of an ordinary partnership is established, and that the firm is not subject to the intrusion of other partners at will, the reason of the rule that restricts the powers of a single partner fails. The parties are strictly partners, not by reason of their common ownership of the mine, but as a result of their own agreement."

A leading case on this subject is Daily v. Fitzgerald, 17 N. M. 137, 125 Pac. 625, 631, Ann. Cas. 1914D, 1183. Therein it is said: "The chief fact which distinguishes mining from general partnerships is the absence of the delectus personae in the former and the resultant rules, that the shares of mining partners may be transferred to others, who become partners in turn by acquiring such interests; and, as the partners therefore have not the right to choose their associates, it necessarily follows that such associates have no power to personally bind their fellow members. (Citing cases.)

"Where there is an express agreement between the parties, and it appears therefrom that they contracted with the object

and purpose of relying on the delectus personae in their relations, the fact that their business was the working of a mine does not affect their relation or liability as general partners.'' Decker v. Howell, 42 Cal. 636, 637.

As above noted, the pleadings, including the complaint, allege that the defendant firm was a mining partnership. Such allegation is not sustained by the evidence, which establishes the contrary. The written contract was offered by defendants and was admitted in evidence without objection. Under such circumstances the complaint on appeal will be deemed amended to conform to the proof. St. George v. Boucher, 84 Mont. 158, 274 Pac. 489; Harrington v. Deloraine Co., 99 Mont. 78, 43 Pac. (2d) 660; Lackman v. Simpson, 46 Mont. 518, 129 Pac. 325; Green v. City of Roundup, Mont., 157 Pac. (2d) 1010.

We think that in view of the evidence the court erred in its finding that the defendants were members of a mining partnership, and should have found that they were liable as members of a general partnership, by virtue of the partnership contract. The record contains much irrelevant evidence, which might more properly apply in an accounting action between the partners. Because of confusion in the evidence, resulting from the theory upon which the case was tried and decided, a new trial should be had, upon which the evidence may be restricted to the issues as herein indicated.

Respondent filed herein a document entitled ''Notice to Dismiss Appeal.'' No motion to dismiss was filed in accordance with section 1, Rule XI of this court, which provides: ''All motions, including motions to * * * dismiss * * * shall be printed or typewritten and shall be presented by serving the same and filing with the Clerk, together with any affidavits and brief relied upon, and proof of service.'' Section 2 of that rule provides: ''Thereupon the adverse party may, within seven days after the service thereof, file and serve on the moving party any counter affidavits and brief in opposition to the motion.'' Section 3 provides: ''Unless otherwise ordered, a motion will be considered and disposed of without oral argument * * *.''

The document filed notified the appellant and her counsel that the respondent "will move the above entitled Court, at the time this appeal will be argued in said Court, * * * to dismiss the appeal," upon several grounds. In order to dispose of the matter on the merits we have considered the document filed as a motion to dismiss in accordance with the rule above quoted.

We have carefully considered the grounds urged for dismissal, and the opposing briefs in that respect.

The motion to dismiss is denied. The judgment appealed from is reversed and the cause remanded for a new trial.

Mr. Chief Justice Johnson and Associate Justice Adair concur.

Mr. Justice Angstman (dissenting).

I disagree with the majority opinion for two reasons.

In the first place the agreement in question does not show that the parties contracted with the object and purpose of relying upon the delectus personae in their relation. The firm is still subject to the intrusion of others who become partners without the right of selection. All that the agreement does is give to one partner the option or preference to buy out the one desiring to sell. If he chooses not to exercise the option or preference, the party desiring to sell may still do so with the result that the person buying becomes a member of the partnership. I think my associates have misconstrued the written agreement between the parties.

Secondly, if the agreement grants to the partners the right of delectus personae as the majority hold, I still think we have before us a mining partnership. Section 8050, Revised Codes, provides: "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same."

The parties to this agreement meet all the requirements of section 8050 to constitute them a mining partnership. The fact that by agreement they restrict their rights and liabilities as between themselves does not deprive them of their status as a partnership so long as the statutory definition is met as here.

So far as third persons dealing with them is concerned, they are not interested in the private agreement between the partners. That agreement simply fixed the rights inter sese. Third persons dealing with a person who is engaged in working a mine are placed on notice that he cannot bind others except by express authority derived from such others. Section 8058, Revised Codes. I agree that the case of Decker v. Howell, 42 Cal. 636, supports the majority view if the agreement in question is interpreted to give the right of delectus personae. I think that opinion is unsound. The only other case that seems to support the holding of the majority is that of Daily v. Fitzgerald, 17 N. M. 137, 125 Pac. 625, Ann. Cas. 1914D, 1183. The Daily case simply followed the case of Decker v. Howell (supra.) Moreover, so far as the Daily case followed the Decker case, it is mere dictum.

In the Daily case the lower court had held that the one partner had express authority to bind the firm. On appeal it was held that there was evidence to support that finding. That being so, there was no need of going further. Also there is nothing in the opinion in the Daily case to indicate that New Mexico has a statute such as our section 8050, and my investigation has failed to disclose the existence of any such statute. I think the agreement giving one partner the option to buy out the other is one affecting but one phase of the partnership agreement between the partners and does not serve to transform the mining partnership into an ordinary commercial partnership.

Since other points raised by appellant have not been considered in the majority opinion, I express no opinion thereon.

On the point considered, I am of the opinion that the trial court was right and that the judgment should be sustained.

Mr. Justice Morris.

I concur in the foregoing dissent of Mr. Justice Angstman. It is not the function of courts to make contracts for parties but to merely construe contracts as made. Union Central Life Ins. Co. v. Jensen, 74 Mont. 70, 237 Pac. 518; Nielson v. Hendrickson, 63 Mont. 518, 210 Pac. 905; Sullivan v. Metropolitan Life Ins. Co., 96 Mont. 254; 270, 29 Pac. (2d) 1046, and cases

cited. Section 7530, Revised Codes, provides: ''When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this chapter.'' Contracting parties may insert any provisions in their agreement that they choose so long as no matter is inserted that conflicts with an express statute or some question of public policy.

Rehearing denied May 16, 1946.